Webster, Ad. d. b. n., et al. v. Diamond et al.

WEBSTER, AD. D. B. N., ET AL. V. DIAMOND ET AL.

1. PRACTICE IN EQUITY:   *Filing bills with double aspect.*
   The filing of a bill of a compound nature —in one aspect a bill to review a former decree, and in another an original bill to vacate the decree for being obtained by fraud, is permissible in equity practice, where the relief sought would in each view be the same.

2. SAME:   *Leave to file bill of review necessary.*
   Leave to file a bill of review is necessary; and if the bill does not appear upon its face, to have been filed by leave, a motion to strike it from the files, and not a demurrer, is the proper mode of objecting to it.

3. SAME:   *Bill of review:   Cumulative evidence:   Discretion of Chancellor.*
   To grant or refuse leave to file a bill of review for newly-discovered evidence, is always within the discretion of the Chancellor; and when a fact has been in issue and proof taken, he will not allow it to be filed upon mere cumulative evidence upon that issue. But if it be written evidence of a binding nature, such as newly-discovered papers, it may suffice; or if it be of some newly-discovered fact not formerly in issue, and which if known would have produced a different decree, leave may be granted to file the bill, and if the allegations be proved, the appropriate relief will follow.

4. FRAUD:   *Decree obtained by fraud of agent.*
   A party can not avail himself of the fruits of a judgment or decree obtained by the fraud of his agent, although without his knowledge or consent.

APPEAL from *Lee* Circuit Court in Chancery.
Hon. J. N. CYPERT, Circuit Judge.

REPORTER'S STATEMENT.

After the decision of this court in the case of *Jacks et al. v. Adair et al.*, reported in *33 Ark.*, *16,* and the issuance of execution as therein directed, the defendants in that suit, Eli T. Diamond and Thomas M. Jacks, presented to the Hon. J. N. CYPERT, judge of the circuit court of Lee county, at chambers in vacation, their complaint in equity

against Ellen Adair, James Adair, and Iral A. Webster as administrator of the estate of Benjamin F. Griffin, deceased, setting forth the pleading and proceedings which appear in the case of *Jacks v. Adair, in 31 Ark., 616,* and the subsequent proceedings set forth in *33 Ark., 661,* and averring that in said suit they could not prove the execution by Benjamin F. Griffin of the power of attorney to James Adair, authorizing him to make the settlement and execute the receipt set forth in said proceedings, for the reason that said Griffin was an obscure colored person living near Oberlin, in the state of Ohio, and the defendants could not prove his hand-writing, and could make no further proof of said power than that it had been seen in Helena. That it was returned to said Griffin at Oberlin to have the certificate of his acknowledgment of it corrected, said certificate being considered by Adair's attorneys as informal; and had been directed to the wrong address and never been returned, and that said Adair professed ignorance of the matter. That in June, 1867, said plaintiff Jacks, with a forlorn hope of success, went in person to Oberlin to see whether any proof could be obtained as to the execution of said power of attorney.

He had before, sought information by writing, but learned in reply, that none could be found; the said Griffin having been dead for many years, and no trace of the transaction to be had. That after arriving at Oberlin he found one Omar Bailey, a lawyer of high standing, whom he supposed to be the same person referred to as Homer Bailey in one of the depositions in the cause, as having had some connection with the transaction; and said Omar Bailey told him that he knew of his own knowledge that said Benjamin Griffin did execute and acknowledge said power of attorney, giving to said James Adair full authority to employ attorneys and to settle all matters relating to the

estate of Dennis Griffin in Arkansas; and also told the
plaintiff the further fact, of which the plaintiffs had never
had any knowledge, that before said settlement and com-
promise set forth in the former suit, said Benjamin
Griffin had sold all his right, title and interest in said es-
tate to said James Adair; so that at the time the said chan-
cery suit was brought, the said administrator of said Ben-
jamin Griffin, deceased, had no interest whatever in said
suit, but all his rights belonged to the said James Adair.
And they averred that said James Adair fraudulently con-
cealed his said purchase and interest in said estate, and
fraudulently joined the administratrix of said estate with
him in said suit, and suppressed the facts in regard to said
power of attorney, in order to get a decree for his own
benefit, on the ground that said Griffin was not bound by
his (Adair's) acts purporting to have been done by his au-
thority.    That neither of the plaintiffs had any knowledge
of the existence of the evidence of the execution of the
power of attorney, until this visit of said Jacks to Oberlin,
and neither of them had ever suspected that Griffin had
sold his interest in said estate to said Adair, and that the
latter was prosecuting said suit in the name of Griffin's
administrator for his own benefit.

They further alleged that the estate of said Griffin; and
said James and Ellen Adair are all, wholly insolvent, and,
if the plaintiffs shall be compelled to perform said decree,
and pay over the money therein adjudged against them, it
will be impossible to recover it, and the whole will be an
entire loss to them; and they submit that the foregoing
facts are sufficient for withholding the amount decreed,
until the cause can be reviewed by the circuit court.

That an execution from the judgment in the supreme
court is in the hands of the sheriff, who will levy on the
plaintiff's property and sell it unless enjoined.

They pray for an injunction against the enforcement of said judgment and execution; that the decree be reviewed and set aside for fraud, and for other proper relief.

With the complaint, the plaintiffs presented, also, the affidavit of Omar Bailey, verifying the fact alleged to have been obtained from him, and also the affidavits of two other witnesses, corroborating his statement of the execution of the power of attorney.

Due notice of the application for injunction was given to the defendants. The injunction was ordered by the Chancellor, and upon the filing of the complaint in court, and the execution of bond as required, was issued by the clerk, and, together with summons, was served upon the defendants.

At the return term of the summons, the defendants answered, denying all the allegations of the complaint in reference to the power of attorney, and the sale of Griffin's interest to Adair, and of the fraud charge; and filed affidavits of various persons in support of the answer, and also filed a motion to dissolve the injunction, and a demurrer to the complaint: First, for want of jurisdiction in the court; second, want of equity in the complaint; third, that the circuit court could not enjoin a judgment and execution of the supreme court; fourth, that there was no averment in the complaint that no other injunction had been granted in the cause; and, fifth, because the alleged evidence was only cumulative to that adduced in the original cause.

The motion and demurrer were both overruled; and upon the final hearing of the cause, the court found the facts for the plaintiffs, and decreed them the relief prayed for, and the defendants appealed to this court.

*Thweatt and B. C. Brown,* for appellants:
This is either a bill of review for newly-discovered tes-

timony, or an original bill to impeach a former decree for fraud.

In the first aspect it must appear that the testimony could not have been discovered by the exercise of reasonable diligence.    26 *Ark.*, 603; 3 *John. Ch.*, 123, 66, 482; 15 *How.*, 547; *Story's Eq. Pl.*, secs. 412, 13, 14; 2 *Ark.*, 42; 13 *ib.*, 379; 17 *ib.*, 100; 30 *ib.*, 737; *Gra. & Water. on New Trials*, 1026.

In the second aspect, if the facts of fraud existed, and could have been set up at time of the former trial, judgment is a bar.    1 *Peck.*, 435, 440; 2 *Gray*, 366; 3 *Day*, 30; 3 *Johns.*, 157; 1 *Johns. Ch.*, 195; *ib.*, 320; 16 *Iowa*, 310; 2 *ib.*, 482; 1 *Wood.*, 353; 12 *Cal.*, 440; 13 *ib.*, 295; 98 *U. S.*, 61.

In either case, due diligence to obtain the evidence is an essential element, and the *onus* is on complainant.

Analysis of the evidence to show no fraud, and insufficient grounds for new trial on review, citing *Tovey v. Young*, *Pr. Ch.*, 193; *Topham v. McGregor*, 3 *H. of L.* cases.

*U. M. Rose*, for appellee:

Argued upon the evidence.    Concealment of the assignment a fraud, justifying review and reversal.    2 *Dan. Ch. Pl. & Pr.*, 1534; *Story's Eq. Pl.*, sec. 426.

Newly-discovered admissions not in the nature of cumulative evidence.    42 *Ga.*, 623; 63 *Me.*, 227; 31 *Ga.*, 128; 1 *E. D. Smith*, 107.    A *fortiori* admission made after trial. 45 *Ia.*, 217; 54 *Int.*, 79.

Conduct and testimony of defendants misleading complainant on former trial, would excuse any neglect in discovering the new facts.    9 *Minn.*, 318.

The testimony in this case not cumulative.    46 *Ga.*, 115; 38 *Iowa*, 368; 36 *Ind.*, 73.

Fraudulent concealment of a decisive fact ground for

new trial. 5 *Ga. Our.*, 75 (*Rg. v. King*); 50 *Ind.*, 126; 36 *N. H.*, 44; *Story's Eq. Pleadings*, sec. 426. Granting review, matter of discretion. *Story's Eq. Pl.*, sec. 417; 45 *Cal.*, 92; 18 *Ark.*, 570.

Appellants presented written argument in reply.

EAKIN, J. The bill in this case is of a compound nature. In one aspect it is a bill to review the decree of the circuit court of Lee county, in equity, which was affirmed by this court in accordance with the opinion therein delivered, and reported in *31 Ark., 616*.

<div style="float:right">1. PRACTICE IN EQUITY; Filing bills with double aspect, permissible.</div>

This court by an opinion reported in *33 Ark., 161*, upon an application for a prohibition, declined to inhibit the court below from entertaining jurisdiction of the cause for the purpose of review; and also declined at that stage to go into the merits of the bill, holding that these matters belonged properly to the original jurisdiction of the chancery court. It has been there, heard and determined, and now comes properly here, on appeal for the correction of any errors which may have occurred in its progress.

In another aspect it is an original bill to attack and annul the former decree as having been procured by a fraud, which inured to the benefit of the legal representatives of B. F. Griffin (otherwise called Frank), in whose favor the former decree was rendered, and here affirmed.

Such compound bills are permissible in equity practice, where the relief sought would in each view be the same, and the Chancellor may mould the relief according to the proof.

The bill will be considered in both aspects. The difficulties, if any there be, concern only the practice; and the application of those rules of policy, which courts of chancery have adopted for the purpose of peace in quieting rights.

So far as the intrinsic merits are concerned, the Chancellor believed, and was well justified by the evidence in believing, that the original decree was unjust, and that it had been obtained by the fraudulent concealment of a fact by James Adair.

2. BILL OF REVIEW: Leave to file, is necessary.

As a bill of review it is founded upon the allegation of newly-discovered evidence. Leave to file it was necessary; and the court to which it was addressed was the proper tribunal to grant it. To prevent abuse application should be made before filing, accompanied with an affidavit showing the nature of the new matter, and that it could not have been obtained and used in the original cause. It has been said that a bill of review which does not, upon its face show it was filed by leave, may be demurred to for irregularity. (*Dan. Ch. Pr., 1578.*) We have no such cause of demurrer in our practice, and the only appropriate mode of making the objection now, as has always been, the better mode anywhere, is by motion to strike the bill from the files. (*Ib.*) No such motion appearing, the objection need be no further noticed.

By reference to the report of the original cause in *31 Ark.*, it will be seen that the rights of the representative of Frank Griffin rested solely upon the question of fact— whether he had or not executed to James Adair a power of attorney, which would enable him to make a binding compromise and settlement. Upon that instrument alone, signed by Adair for Frank Griffin, as his attorney, the defendants rested, and upon that issue failed.

There was proof that such a paper was in existence, or rather an instrument purporting to have been signed by Frank Griffin—valid if genuine—to confer the authority claimed by James Adair. It had been seen by divers persons, who did not seem to question its genuineness. It had

been sent back to Frank Griffin for some correction not affecting its validity, and had never been returned.

The new evidence upon this point consists of positive proof of the original execution of the power, and presumptive proof that Frank never revoked nor wished to revoke it during life. Perhaps, if this testimony had been in the original cause, the result may have been different; but upon a fair consideration of all its weight, we can only look upon it as cumulative, without such character as a new and unexpected discovery, or, as so partaking of the nature of the stringent written evidence as to bring it within the usual rules, under which bills of review of this nature are allowed. Evidence merely cumulative is not enough, and for the purpose of proving the power of attorney, a review should not have been granted.

But the fact that the whole interest of Frank Griffin really belonged to James Adair, was never made an issue. It was evidently unknown to the defendants in the original cause at the time of the hearing, yet it is such a fact as, if then known, might have been used under the pleadings, and would, if supported by evidence satisfactory to the Chancellor, have entirely defeated the original action. The bill alleges, and the proof tends strongly to show that James Adair had long before the compromise in question, absolutely purchased the whole interest of Frank in the Dennis Griffin estate, by which he would be held in equity to have bound himself under the pretense of binding Frank, and by virtue of which, also, Frank, or his estate, would have been totally excluded from all benefits of the suit.

To grant or refuse leave to file a bill of review for newly-discovered evidence, is always within the discretion of the Chancellor, who has often been governed by the particular circumstances of the case. The action of the courts

3. Cumulative evidence Discretion of Chancellor

has not always been uniform.   But it may be asserted that when a fact has been in issue and proof taken, general evidence of a cumulative character upon that issue will not be sufficient to move the court to grant leave for a bill of review.   But, if it be of some written evidence of a binding nature, such as newly-discovered papers, and not a mere piling up of witnesses to the same fact, it may suffice.   Or if it be of some newly-discovered fact, not formerly in issue, but which having been known would have given a different direction to the decree, the leave may be granted to file the bill, and if the allegations be sustained the appropriate relief will follow.   *Story's Equity, sec. 4154, notes, where the authorities are collected.*

The sale to James Adair was a new fact, not directly in issue in the original case, and concerning which no evidence was attempted on the part of defendants; nor thought to be necessary.   Its subsequent discovery support the bill of review, if the defendants in the original cause did not know it, or could not by reasonable diligence have known it, in time to interpose it as a defense, and have not been guilty of laches in prosecuting their suit since its discovery.   These were questions of facts, addressed to the sound, equitable discretion of the Chancellor.

The first question presented on this point is, did Diamond or Jacks, before the first hearing, know, or have any cause to suspect, that Adair had purchased Frank's interest in the Griffin estate, or was there any such intimation of it, as to impose on them the duty to make inquiry upon that point for the purpose of using it in their defense?

A reference to the original testimony of James Adair, and Sanders, his attorney, does show that, in a vague sort of way Adair claimed to have bought out the interest of Frank.   He told Sanders that he was proceeding under the power of attorney and exhibited it to him.   Sanders

thought it should be sent to Ohio for some formal correction. Upon being told of it, James remarked that it made no difference, "as he had Frank's interest." Sanders did not remember whether he claimed it by purchase, gift, or how. James Adair, in his testimony in the original case, says that the only paper he ever had from Frank was one, containing an agreement to sell him the interest in the estate for $550 to be paid in six months, which agreement he forfeited by non-payment. Hindman and Sanders were partners, and he says Hindman told him the agreement was worthless, and took it from him to send back and get something better.

James Adair, in his answer, had set up no claim to Frank's interest as purchaser. Taking this altogether, and it was all that was developed in the original case, no reasonable man would have been led to suspect that the remarks of James Adair were based upon anything else than an erroneous conception of the power of attorney and its effects. The defendants could not on these grounds have asked a continuance of the cause, with any reasonable grounds of expectation, that they would discover a separate deed of sale and transfer of Frank's interest to James Adair.

They would have been thrown off their guard, if they had been inclined to suspect anything of the sort, by the careful change made in the draft of the agreement of compromise. As originally written, it stated that " we sign this for ourselves and as assignees of Frank Griffin, whose interest in said estate we have purchased." Thus, it may be read through the erasures. As erased and interlined, it reads, "we sign this for ourselves and as *attorney in fact* of Frank Griffin, whose interest in said estate we represent." It is then signed by James Adair, Mary Ellen (her X mark) Adair and Frank Griffin, by his attorney, in fact, James

Adair. It can not be supposed that after this careful dis-claimer, both in James Adair's signature, and in his an-swer, with the explanation of his evidence furnished by indubitable proof upon the former hearing, that the only paper he ever professed to have was, in fact, a power of at-torney; any reasonable man would have thought of hunting up evidence of a sale. The plaintiffs in this bill may fairly claim that they did not know of the fact of the sale, and could not, therefore, have used it. The discovery seems to have been accidental, whilst in pursuit of more definite ev-idence of a power of attorney. As there was nothing to prompt a search for the proof of a sale, nor any good reason to believe there had been one, there can be no laches at-tributed to the delay. The case, with regard to the sale, seems to come within the rules governing bills of review.

It is objected that the plaintiffs in this bill can not be heard until they have performed the decree. This is one of those general rules in equity practice, depending so much upon the particular circumstances of each case, as to be merely a general index to guide the discretion of the Chancellor. It is often dispensed with when it would lead to injustice. In this case it would not be required of Jacks or Diamond to pay over the former decree to an irrespon-sible non-resident, before interfering to relieve them. Per-haps an order to compel him to bring the money into court might have been proper, but no motion to that end was made. See as to exceptions to this rule, and its general scope, *Story's Eq. Pl.*, sec. 406.

4. FRAUD: Decree obtained by fraud of an agent. Next, we will consider this bill in its aspect of an attack upon the former decree, for fraud. The actual fraud was, in the suppression of the evidence of the sale, which the Chancellor must have found to have been done by James Adair, or the decree could not have been rendered under either aspect of this case.

Generally, one who obtains a decree or judgment in consequence of some fraud in a third person, of which he had no knowledge, may stand upon his adjudicated rights, although such fraud would have been a good defense in the action, against one not a purchaser for valuable consideration, or if afterwards discovered, may be grounds for a bill of review.

But that rule does not apply to the fraud of an agent, when the principal endeavors to avail himself of its fruits, although it may have been originally without his knowledge or consent.

"The law seems to be," says Mr. Story (*Eq. Ju., note 2 to sec. 193 a*), "that the principal is liable for the fraud of his agent in the course of his employment, as for any other tort," and in the text (*supra*) he says of the principal that "if he persists in taking the benefit of his agent's fraud, it is immaterial whether the fraud was originally concocted by the principal or the agent if he adopts the acts of his agent." Indeed, he says, further on, that any third person "seeking to derive any benefit under such a transaction, or to retain any benefit resulting therefrom, becomes *particeps criminis*, however innocent of the fraud in its inception." Perhaps this last extension of the principle to innocent parties who have obtained a decree through the fraudulent conduct of a third party with whom they had no connection or privity, and of which conduct they had no knowledge, should not reach the case of a bill to set aside a judgment or decree for fraud, but be confined to the defense in the original action, or to a bill of review for newly-discovered evidence. For in such cases, although the defense, if made, would be good, it can not be said, that without the *scienter*, the decree itself was obtained by fraud. It would have been obtained by ignorance of his defense on the part of defendant or failure to make it. Yet, in the

case of an agent a new principle finds room for operation. *Qui facit per alium facit per se.* The principal is chargeable with the fraud, and if through that he obtains a decree, it is in effect as if he obtained it through fraud of his own. Here, the fraud is in obtaining the decree itself, and it should be liable to attack as fully as if the fraud were perpetrated by the principal himself.

In the case now in judgment, the evidence tends to show, and doubtless satisfied the Chancellor, that, when the former decree was obtained, James Adair was not only the vendee of all Frank's interest in the estate, but for the purposes of the sale, was also the attorney in fact of Frank Griffin, in all proceedings that might be necessary to the realization of the interest. It was a power coupled with an interest, and did not die with the principal. The original relation remained between Adair and the representative of Frank; and the proof shows that up to the time of. the compromise at least, James Adair proposed to control, and actually did control the interest of Frank, as well as that of Mary Ellen, his wife.

He did not, it is true, employ the attorneys who represented Frank's, in the prosecution of the suit resulting in the decree now attacked. They (or Mr. Thweatt) had been employed by Frank Griffin in his lifetime for that purpose, and the suit was jointly prosecuted for the benefit of the legatees, of whom James Adair's wife was one. He was made defendant *pro forma*, but made no *bona fide* defense. Evidently his feelings, his interest and his efforts, were all on the part of the complainants, as his letter to the administratrix, Frank's wife, abundantly proves.

Upon this point, then, it seems clear that there subsisted between James Adair and the representative of Frank Griffin's estate, such community of interest, purpose and efforts in the original suit, as to hold them to all the con-

sequences of his fraud to the fullest extent above laid down. They are not innocent purchasers for value, but stand in Frank Griffin's shoes.

But the case for relief is stronger. The suit was actually directed by Frank Griffin himself, according to the direct testimony of his attorney Thweatt, who, of course, had at the time no intimation of its fraudulent character, if it were so. He continued to prosecute it, to a successful issue, for the benefit of Frank's estate. This made Frank himself guilty of the fraud, which he could never have hoped to carry through, but by collusion with James Adair to conceal the proof, not only from the defendants, but from his own attorneys even, that when James Adair signed the compromise he conveyed everything which could be claimed by any legatee. So far the facts found by the Chancellor, have been taken hypothetically as true. A review of the evidence satisfies us that the preponderance is in their favor. That being the case, the decree is such as justice required, and is sustained by all rules of equity.

Affirm.