## MURPHY *v.* CITIZENS' BANK OF JUNCTION CITY.

### Opinion delivered June 3, 1907.

1. JUDGMENT—AMENDMENT—SUFFICIENCY OF EVIDENCE.—The record of a judgment of a court of record will be amended to speak the truth upon evidence that is clear, decisive and unequivocal. (Page 106.)

2. APPEAL—BRINGING UP THE EVIDENCE.—Where a decree in chancery appealed from recites that the testimony of certain witnesses was heard orally and not in the form of depositions, and their testimony is taken down and certified to by a stenographer, but not by the chancellor, such testimony will not be considered on appeal. (Page 107.)

3. SAME—PRESUMPTION WHERE EVIDENCE IS NOT BROUGHT UP.—Where some of the evidence upon which a decree was based was not brought up, it will be presumed on appeal that the decree was correct. (Page 108.)

Appeal from Union Chancery Court; *Emon O. Mahoney,* Chancellor; reversed.

### STATEMENT BY THE COURT.

The appellant filed the following motion in the Union Chancery Court:

"Comes Guy Murphy, receiver, and moves the court to amend the record of this court, as follows:

"To show at page 540 of Chancery Record "F" that on January 24, 1905, the chancery court adjourned until January 30, 1905, instead of February 27, 1905, as now appears.

"To show the date at the top of the page 541 of said record to be January 30, 1905, instead of February 27, 1905, as now appears.

"To show the date at top of page 542 to be January 30, 1905, instead of February 27, 1905, as now appears.

"To show at page 543 that court adjourned on January 30, 1905, until February 6, 1905, instead of February 28, 1905, as now appears.

"To show the date of the following opening orders on said page to be February 6, 1905, instead of February 28, 1905, as now appears.

"And for reason states that the said amendments are necessary to make said record speak the truth; that said records did speak the truth, but were afterwards modified and changed so as to appear as above set out; that said alterations are due to misprisions of the then clerk of this court."

Appellant then introduced Mr. Floyd, his attorney, who testified that the record of the chancery court (record F) showed that an erasure had been made in the date of the opening order; that pages 540, 541, 542 and 543 showed that January had been changed to February, and that on page 542 the date had been changed. The capital "J" can be distinctly traced; also the figure "3." While he could not place the erasures from his own recollection, yet, by various memoranda that were made before there was any object in changing the record, he was enabled to testify that the chancery decree was rendered on the 30th of January, 1905, instead of February 27, 1905, as the record now shows. The decree of the chancery court is set out on pages 541, 542 and 543 of the chancery record book "F." One reason that he had for placing the date January was that he had a distinct recollection of sending a check for $100 to Judge George W. Hays in pursuance of an order by the chancellor for services to the receiver. He sent the check on the day following the day the allowance was made. "The allowance was

not made until the decree was made." The check co
George W. Hays for $100 was dated January 31, 1905,
signed "Guy Murphy, receiver, by R. L. Lloyd, attor-
ney." The indorsement on the check shows that it was paid
February 4, 1905. Witness was permitted to use this check to
refresh his memory, and from this testified as above as to the
day the order was made allowing the receiver for services. Wit-
ness Floyd further testified that he brought suit in the circuit
court for the receiver against the Citizens' Bank of Junction
City; that the complaint was based on the chancery decree,
the date of which is now in controversy; that he referred to
the chancery record for the purpose of getting the date of the
decree, and that the date of that decree, as alleged in the com-
plaint and amended answer in the law case, was January 30.
He, after refreshing his memory from the papers in the law
case, testified that the date of the chancery decree was January
30, 1905. Witness testified that he had occasion to look at the
date of the chancery decree several times in order to get the
date in another case. He looked at the date of the chancery
decree especially to ascertain if the time for the filing of the
transcript in the Supreme Court had expired, and he did not
remember that it was January 30 "from pure memory," but
that one year had elapsed from the date of the chancery de-
cree, whatever it was.

W. J. Pinson, who was the clerk of the chancery court at
the time the decree was entered, and who entered same on the
record, testified that on the third report of the receiver, which
was also a petition to be allowed to make a distribution of funds,
there was an indorsement as follows: "Allowed 2-6-05," which
means what it says. He further says he did not recollect wheth-
er the order was made, did not know whether it was filed in
open court or not; "it might have been made, and it might not
have been; it was filed February 6." On cross-examination by ap-
pellee, witness testified that the records speak the truth; all
he ever wrote speak the truth. He testified that the alleged
changes seemed to be in his handwriting. Sometimes in writ-
ing the record the court had him to change the date. He or-
dinarily wrote the dates in pencil, and "then in writing them
up, if I changed the dates, it was done by order of the court."

Witness testified in behalf of appellee that in his experience as chancery clerk he never changed a record unless it was done by the order of the court, and finding that it was not the proper date; was never accused of such a thing before. In the rush of business it was sometimes two or three days before he could put up the record; never kept right up. It was sometimes the case that he would not get the dates of the record exact; that happened to every clerk. He was present when the case was tried before Judge Mahoney. The court said he would allow $100 to Judge Hays, and there was no objection to that. The court had the matter of the chancery decree under advisement for some time. Two or three days of chancery court intervened between the time he took the matter under advisement and the time the decree was rendered. On cross-examination by appellant's counsel, Mr. Floyd, the following are the questions and answers:

"Q. Did the court direct you to change the records? A. I don't know. Q. You know that it has been changed? A. No. Q. Look at it. Can't you see that the ink entry has been erased and a pencil entry made? A. Yes. Q. Isn't that a change? A. It is. Q. When was it made? A. I presume it was made at the time. Q. What time? A. At the time of the transaction. Q. You mean that it was actually February 27, and you wrote it in ink January 27? A. I do not know when it was. Q. Do you know that the pencil writing was made by yourself? A. I think I wrote that. Q. Turn to page 542. Who wrote that? A. In the absence of any one else having authority, I will say that I wrote it. Q. Do you remember my calling your attention to the fact that one year had elapsed between them? A. When. Q. In January, 1906? A. I do not remember that. I remember that the lawyers generally came in and asked about the time of the transcripts. Q. I asked you about this, didn't I? A. Yes, I suppose you did. Q. Don't you remember that I said to you that the time had already elapsed? A. No, I do not. Q. Don't you remember me telling you that there was an erasure? A. I do not remember you telling me. Q. Did I ever accuse you of changing the record? A. You did by this paper."

After the examination of the witness Pinson was concluded, the record recites the following:

The Court: "There is nothing in this question. I would swear that he wrote it, if I had to swear."

Mr. Floyd: "You know that he did write it?"

The Court: "I am sure he did. I often have the clerk change the records from the opening day of the court. The sheriff in Little Rock never walks into the court but twice a year, and that is on the opening days. I do not see the sense in this. Write the motion as overruled."

Copies of the pages of the chancery record in evidence are in the record. Page 540 shows that the chancery court opened January 24, 1905, and adjourned until February 27, 1905. Page 541 shows that the court opened February 27, 1905. There follows on this page and page 542 the decree of the court, which was rendered as indicated by these pages Monday, February 27, 1905.

In the decree is an order allowing George W. Hays $100 for services as attorney for the receiver. At the conclusion of the decree on page 542 is the adjourning order to February 28, 1905. Page 543 shows that the chancery court opened February 28, 1905, and adjourned to March 4, 1905.

The finding and decree of the court is as follows:

"That the said chancery record 'F,' pages 540, 541, 542 and 543, does speak the truth as it now stands, and that the proper dates of the opening of said court, as shown on said pages, are correctly given, and that said record should not be changed. It is therefore considered, ordered and adjudged by the court that the motion of the receiver herein be and the same is hereby overruled."

*R. L. Floyd,* for appellant.

*Smead & Powell* and *Marsh & Flenniken,* for appellee.

WOOD, J., (after stating the facts). The testimony shows conclusively that the dates of the decree of the chancery court in controversy here had been changed. The uncontroverted evidence also is that the original entry of the date was in ink, and that this entry was erased, and a pencil entry made. The

original record, showing the change in the date of the entry and in what the change consisted, is not before the court, but witness Floyd testified, and there is no contradiction of his evidence, that "January has been changed to February," that "you can distinctly trace the capital 'J' and also trace the figure '3.' "

In other words, the undisputed evidence shows that the date of the decree was first written in ink "January 3," something, and that this was erased, and the date as it now appears in the record "February 27, 1905," was entered in pencil. The question here is did the original entry of the date in January, 1905, represent the true date of the decree, or was the true date as represented by the pencil entry of February 27, 1905. The clerk who entered the decree testified in a general way that "the records speak the truth, and all he ever wrote speaks the truth;" and he also testified that he ordinarily wrote the dates in pencil, and whenever he changed the date it was by the order of the court, and that he never changed a record unless it was by order of the court after finding that it was not the proper date. But he also testified specifically that "the ink entry" of the date of this decree "had been erased, and a pencil entry made," and that he presumed the change was made at the time of the transaction, but that he did not know when the change was made. This evidence, while it shows that there was an erasure in the date of the decree as first written and that the date as it now appears was written instead in pencil, does not show when the pencil date was written, and when the erasure and change took place, and whether it was on the date of the entry of the decree or not.

On the contrary, the testimony of the witness Floyd is direct and positive, after refreshing his memory from memoranda made by him based upon the date of the decree, that the true date of the decree was January 30, 1905, instead of the date as now written, February 27, 1905. And the testimony of Floyd is so corroborated, clear and satisfactory and supported by other evidence in the record as to convince us beyond reasonable doubt that the date of the chancery decree in controversy was January 30, 1905, instead of February 27, 1905, as now written.

The record shows the first opening order of the court was

January 24, 1905. If court was adjourned on that day till January 30, 1905, and the decree was rendered on the latter date, and court, adjourned on that date till February 6, 1905, as is contended by appellant, then the record entries will be consistent with the testimony of the clerk as to the length of time the case was taken under advisement, and also with his testimony showing that the report of the receiver and petition to make distribution was filed and allowed February 6, 1905.

The testimony of the clerk tends to show that the case was taken under advisement two or three days, "some days." But, if the case was submitted January 24, 1905, and taken under advisement till February 27, 1905, more than a month intervened. Again, if the court adjourned from January 24, 1905, till February 27, 1905, then it could not have made an allowance of a petition for distribution, as the clerk shows was done, on February 6, 1905. Again, if the true date of the decree had been February 27, 1905, instead of January 30, 1905, it is most improbable and unreasonable that the clerk would have first written January, instead of February, and that he would have first written 30, instead of 27, as the proof shows conclusively was done. It frequently happens that one in writing from habit continues to write the last month or year for a few days the succeeding year or month, but it would be most unusual and unnatural for one to enter a date of a month before the month arrives. It is unreasonable to suppose, or to find that if the decree was rendered the 25th of February, 1905, that the clerk should have first written it the 30th of January, 1905, and that he should have made the mistake three times. We are aware that proof to change and correct a record should be clear, decisive and unequivocal to the effect that the written memorial does not reflect the facts. *Foster* v. *Beidler,* 79 Ark. 418; *Davenport* v. *Hudspeth,* 81 Ark. 166; *Goerke* v. *Rodgers,* 75 Ark. 72; *McGuigan* v. *Gaines,* 71 Ark. 614.

We so regard the proof here. It matters not if the change was made, as the clerk says, by the order of the court. Parties litigant have the right to see that the record of the proceedings in their causes should reflect the facts, "speak the truth." The chancellor was in error in supposing that he could order a change of the date in the opening order of court without reference

to whether the date fixed by him was the correct one or not. The dates of the opening and adjourning orders of court often become most important in determining the rights of parties, and the court can not change these or any other matters occurring in due course of legal proceedings, contrary to the facts. And no change should be made in the record, after long lapse of time, even to make it speak the truth, without notice to the parties in interest and opportunity to be heard.

The decree of the court refusing to grant appellant's motion to have the record of the chancery court corrected in the particulars named therein is reversed, and the cause is remanded with directions to grant the relief sought. Treating the record corrected as herein directed, it results that the appeal in cause numbered 6247 was not taken in time, and same is therefore dismissed.

## ON REHEARING.

Opinion delivered July 22, 1907.

WOOD, J. No. 6,616 is docketed as a separate case, but it is really a part of No. 6,247, being an appeal from an order of the chancery court overruling a motion to correct the record in a case that had been appealed from that court and was numbered in this court as No. 6,247. The opinions formerly delivered show the nature of the proceedings. When the case No. 6,616 was decided, there was no brief filed on behalf of the appellee, and our attention was not directed to a defect in the record which was unobserved by us. On motion for reconsideration, counsel for appellee makes an affidavit setting forth the reasons why no brief was filed when the case No. 6,616 was originally considered. These reasons are satisfactory to the majority of the judges, and we take up and consider now, on motion for rehearing, the questions presented for the first time for appellee the same as we would have done had the matter been called to our attention in the first instance.

The decree and final order of the court refusing to correct the record on the motion of appellant recites that: "The same is submitted on the deposition of George W. Hays, the testi-

mony of R. L. Floyd and W. J. Pinson, and pages 540, 541, 542, and 543 of chancery record 'F' of Union County Chancery Court. And the court, after considering all the evidence herein and being fully advised in the premises, finds," etc. This recital shows that the testimony of witnesses was heard in the cause, not in the form of depositions. There is copied into the transcript what purports to be this testimony taken down by a stenographer and afterwards reduced in longhand by her and certified to as follows: "I hereby certify that the foregoing is a true and correct transcript of the evidence taken by me in shorthand, in the case of C. P. McHenry et al., plaintiffs, *v.* El Dorado Lumber & Planing Mill Co., defendant, taken on January 28, 1907. May Craig." But this does not identify the testimony as that heard by the chancellor in the motion pending before him to correct the record. There is nothing to show that this testimony was ever filed and made part of the record in the cause. There is no authentication of same in a bill of exceptions under the hand of the chancellor, or in any other way, and we can not consider it. The case is ruled by *Beecher* v. *Beecher,* 83 Ark. 424, and by other cases there cited.

We must presume, in the absence of all the evidence upon which the decree was based, that it was correct.

The motion for reconsideration is therefore granted, the cause (No. 6,247) is reinstated, and the decree of the chancellor is reversed for the reasons stated in the opinion heretofore rendered.

ON SECOND REHEARING.

Opinion delivered October 14, 1907.

PER CURIAM. On the 3d day of August, Guy Murphy, receiver, presented a petition for a rehearing. His grounds were as follows:

"That the bank, by agreeing that the evidence in No. 6,616 be treated as depositions, waived any objection it might make to its not being made part of the record by bill of exceptions.

"That the failure to brief case No. 6,616 by the bank was due to the negligence of its counsel.

"That the evidence in No. 6,247 was taken orally in open court, but is not made part of the record by bill of exceptions, and the decree of the chancellor therein should be affirmed as is similarly held by the court in No. 6,616."

He now shows to the court that his attorney, on the 26th of August, took the transcripts of said cases out of the office of the clerk of this court in order that he might brief his said motion for rehearing, and that the grip containing the same was stolen; and he asks time in which to furnish the court with additional transcripts in lieu of the ones lost, and to prepare briefs, and says it will be about four weeks before the transcripts can be supplied.

The court would be inclined to grant the petition for time if the motion for rehearing could be availing; but the matters now sought to be reviewed were thoroughly and exhaustively considered by the court, and are discussed in the opinion. The transcripts were examined carefully by the judges in consultation, and the conclusion was reached after the most patient and careful investigation. For this reason, the petition for time is denied, and the motion for rehearing is overruled.