Mitchell and Shaw *v.* The Federal Land Bank of St. Louis, Missouri.

4-7124 and 4-7125 consolidated          174 S. W. 2d 671

Opinion delivered October 25, 1943.

254

Bruce H. Shaw and J. M. Smallwood, for appellant.

W. H. Bengel and G. V. Head, for appellee.

McFADDIN, J.   This opinion involves two ·appeals, in which appellants, as judgment creditors, (1) claim their judgment liens to be superior to the mortgage liens of the Federal Land Bank; and (2) challenge the right of the Federal Land Bank to accelerate its indebtedness and mortgage liens in the foreclosure suits filed in 1939.

### The Facts

In April, 1927, Rufus Smith, for value received, executed a note to the Federal Land Bank of St. Louis for $24,000 with interest and principal due and payable on an amortization plan in serial, semi-annual payments to and including June, 1963, conditioned that failure to make any payment when due would mature the entire obligation at the option of the payee. The note was secured by a first mortgage on 541 acres of land in Logan county, Arkansas, and the mortgage, describing the indebtedness and the maturity thereof, was duly filed and recorded. The mortgage also stated that failure to make any payment on the note when due, or failure to pay the insurance premiums or taxes when due, gave the

mortgagee the option to declare the entire indebtedness due and payable.

Likewise, in May, 1927, Hoyt Smith, for value received, executed a note to the Federal Land Bank for $25,000, with the same provisions as to payments and default and optional acceleration of maturity as in the Rufus Smith note. The Hoyt Smith note was secured by a mortgage on 660 acres of land in Logan county, which mortgage was duly filed and recorded, and contained the same language as to maturity of indebtedness, default and optional acceleration of maturity, as in the Rufus Smith mortgage.

The Rufus Smith and Hoyt Smith transactions were entirely separate; but in June, 1931, each note and mortgage became delinquent. In October, 1931, the State Bank Commissioner obtained certain joint and several judgments against Rufus Smith and Hoyt Smith, which judgments were liens on the lands on which the Federal Land Bank had the first mortgages, as above recited.

In November, 1931, the Federal Land Bank filed foreclosure suits in the Logan chancery court, being cause No. 1053 on the Rufus Smith note and mortgage, and cause No. 1052 on the Hoyt Smith note and mortgage; and in each suit the Federal Land Bank exercised its option to accelerate the entire indebtedness and mortgage; and notice of *lis pendens* was duly filed and recorded for each suit. A receiver was appointed, who took charge of the lands and rendered reports, and the foreclosure suits remained on the docket until February 21, 1938.

In 1932, the First National Bank of Paris (an appellant here) secured a joint and several judgment against Rufus Smith and Hoyt Smith, which judgment was a lien on the land; and the Paris bank has all the time kept the lien of its judgment alive and continuous by timely revivor proceedings; and the Paris bank was never a party to the foreclosure suits, Nos. 1052 and 1053, as above detailed. In 1933, the State Bank Commissioner, by several assignments, transferred to A. L. Mitchell and Bruce H. Shaw (appellants here) the judgments obtained by the

Bank Commissioner against Rufus Smith and Hoyt Smith, above mentioned. The Bank Commissioner had been duly made a party defendant in each of the foreclosure suits; but neither Mitchell nor Shaw was a party in the foreclosure suits, Nos. 1052 and 1053. Mitchell and Shaw have all the time kept the liens of their judgments alive and continuous by timely revivor proceedings.

On February 21, 1938, the foreclosure suits (Nos. 1052 and 1053) were dismissed by an order in each case. The judge's docket contains the notation: "Cause dismissed without prejudice, as per precedent." The order, as entered in each case, is as follows:

"And it appearing to the court that the defendants herein consent and agree to the dismissal of said suit and further agree that the dismissal of same shall in no way affect the mortgage and note sued upon, as described in plaintiff's complaint, or impair the rights of the plaintiff, the mortgagee therein, and that the unpaid portion of the mortgage indebtedness and the priority of plaintiff's lien securing its payment shall be and remain in full force and effect as though no suit had been filed.

"It is, therefore, considered, ordered and decreed that said cause be and same is hereby dismissed without prejudice to future action.

"It is further ordered and decreed that the dismissal of said suit shall in no way affect the validity of the mortgage and note sued upon or impair the rights of the plaintiff, the mortgagee therein, and that same shall be and remain in full force and effect as though no suit had been filed."

On December 21, 1939 (22 months after the dismissals) the Federal Land Bank of St. Louis again filed foreclosure suits in the Logan chancery court on the 1927 notes and mortgages, as previously mentioned, being cause No. 1659 on the Rufus Smith note and mortgage, and cause No. 1658 on the Hoyt Smith note and mortgage; and in each suit the Federal Land Bank alleged delinquencies in 1939 and again exercised its option to accelerate the entire indebtedness and mortgage. Appellants were made defendants (along with the Smiths and

other parties) in each suit; and appellants (1) claimed their judgment liens to be superior to the mortgage liens of the Federal Land Bank; and (2) challenged the right of the Federal Land Bank to accelerate its indebtedness and mortgage liens in causes Nos. 1658 and 1659, since in causes Nos. 1052 and 1053 acceleration had been first claimed and then waived. From an adverse decree, the appellants have appealed to this court in appeal No. 7125.

While the causes, Nos. 1658 and 1659, were pending in the chancery court, appellants, Mitchell and Shaw, on October 20, 1941, filed in each of the original causes Nos. 1052 and 1053 a motion for order *nunc pro tunc,* seeking to have the February 21, 1938, order of dismissal (set out above) show that no testimony was heard and no agreement was made before the court, and seeking to show that the order was merely a voluntary nonsuit. From a refusal of the court to enter the requested *nunc pro tunc* order, appellants have appealed to this court in appeal No. 7124. The two appeals are consolidated in this court.

## Opinion

I. The One-Year Nonsuit Statute. Appellants invoke the one-year nonsuit statute, which is § 8947 of Pope's Digest, pointing out that the orders of dismissal in the first foreclosure suits were made in February, 1938, and that the second foreclosure suits were not filed until December, 1939 (22 months later). But this contention of appellants is without merit. Mr. Justice Frauenthal, speaking for the court, in *Love* v. *Cahn,* 93 Ark. 215, 124 S. W. 259, said: "But the statute (Kirby's Digest, § 5083) which tolls the statute of limitation for one year where the plaintiff suffers a nonsuit does not narrow the period of limitation in which an action may be brought upon a claim which is not otherwise barred by the general statute of limitation applicable to such claim. This provision of the statute only applies to those causes of action which, under the general statute of limitation applicable to such cause of action, would otherwise be barred before the running of one year from the time of taking such nonsuit. The statute, instead of shortening

the period of limitation, really extends the period provided by the general statute of limitation applicable to the cause of action." To the same effect see *Dressler* v. *Carpenter*, 107 Ark. 353, 155 S. W. 108; *K. C. S. Ry. Co.* v. *Akin*, 138 Ark. 10, 210 S. W. 350; and annotation in 83 A. L. R. 486.

II. The Five-Year Statute of Limitation. Appellants·claim that the mortgages were barred by the five-year statute of limitation when the 1939 suits were filed; but since the testimony of the treasurer of the Federal Land Bank shows that the defaults in payments occurred in June, 1939, and since the recorded mortgages show payments to be due semi-annually in June and December of each year to 1963, it is certainly clear that payments were made within five years of the filing of the suits in December, 1939, and, therefore, there is no merit to a plea of limitations under § 8933 of Pope's Digest.

III. The Marginal Indorsement Statute. Appellants urge the five-year statute of limitations because of appellees' failure to make marginal indorsements under §§ 9436 and 9465 of Pope's Digest, appellants' reasoning being that: (1) in the suits filed in 1931 appellee accelerated the maturity of the mortgages; (2) this acceleration was for all purposes; (3) the *lis pendens* notices in the 1931 suits stated that the mortgages were accelerated; (4) the *lis pendens* was notice of the maturity of all of the indebtedness in 1931; (5) there were no payments noted on the margin of the records where the mortgages were recorded; (6) five years after 1931 the mortgages became barred as to third persons; and (7) appellants are such third persons under § 9465 of Pope's Digest.

This is a very skillfully constructed argument, but there are several vices in the structure of this argument. For instance, the mortgages, as recorded, stated the maturities were due semi-annually to and including 1963, so each mortgage showed on its face that it was not past due, and thus marginal notations of payments would not be required to keep alive a mortgage which was not past due by its terms. Another answer to appellants' argument—and thoroughly decisive—is that appellants have

changed the entire purpose of a *lis pendens* notice from a shield of protection to a sword of attack. The notice of *lis pendens* is for the purpose of preserving rights pending the litigation. In the third and fourth steps of their argument, the appellants have changed *lis pendens* into a signal for the beginning of limitations. Appellants, Mitchell and Shaw, purchased their judgments in 1933; and the First National Bank of Paris had secured its judgment in 1932. Both of these events were during the pendency of the first foreclosure suits, which were commenced in 1931 and dismissed by stipulation in 1938; and there was a *lis pendens* notice duly recorded for each case in full compliance with § 8959 of Pope's Digest. In *Cherry v. Dickerson,* 128 Ark. 572, 194 S. W. 690, Chief Justice McCulloch, speaking for this court, said: "The statute of this state on the subject of *lis pendens* notice is but declaratory of the common law, restricted to written notice of the pendency of the action which must be filed with the recorder of deeds."

The rule of *lis pendens* applies not only to purchasers pending the suit (see *Bailey* v. *Ford,* 132 Ark. 203, 200 S. W. 797), but also to a creditor obtaining a judgment during the pendency of the suit (see 38 C. J. 61); and the rule is clearly stated in 38 C. J. 4, as follows: "One who acquires from a party an interest in property which is at that time involved in a litigation in a court having jurisdiction of the subject-matter and of the person of the one from whom the interest is acquired, takes subject to the rights of the parties to the litigation, as finally determined by the judgment or decree, and is as conclusively bound by the results of the litigation as if he had been a party thereto from the outset." The final determinations of the 1931 foreclosure suits were the orders of dismissal of 1938, wherein the mortgages were reinstated "in full force and effect as though no suit had been filed." This order was binding on appellants under the *lis pendens* rule, and this fact defeats the marginal indorsement argument of limitations which the appellants have advanced.

IV. The *Nunc Pro Tunc* Proceedings. To overcome the argument that they were bound by the terms of the

1938 order of dismissal, appellants, Mitchell and Shaw, sought to have a *nunc pro tunc* entered in the original causes, Nos. 1052 and 1053, so as to show only a simple voluntary nonsuit rather than a consent to reinstatement. This motion for order *nunc pro tunc* came before the court with the same judge presiding as when the orders of dismissal were made in 1938; and the fact that, under these circumstances, the court, at the hearing in 1941, refused to grant the motion for order *nunc pro tunc* is highly persuasive that the original orders of dismissal spoke the truth. Certainly the chancery court felt that the testimony, as offered by appellants in support of their motion, did not fulfill the requirements stated by this court in *Turnbow* v. *Baird,* 143 Ark. 543, 220 S. W. 826, where it was stated: ''In the case of *Midyett* v. *Kerby,* 129 Ark. 301, 195 S. W. 674, we said: 'Courts should be cautious in rendering *nunc pro tunc* orders and decrees. The power may be exercised upon parol testimony alone, but the evidence should be clear, decisive and unequivocal. It should be of sufficient character and weight to overcome the written memorial. *Bobo* v. *State,* 40 Ark. 224; *Liddell* v. *Bodenheimer,* 78 Ark. 364, 95 S. W. 475, 115 Am. St. Rep. 42; *Murphy* v. *Citizens Bank,* 84 Ark. 100, 104 S. W. 187; *Sloan* v. *Williams,* 118 Ark. 593, 177 S. W. 427.' ''

At all events, the making or refusing of the order rested in the sound discretion of the lower court. *Richardson* v. *State,* 169 Ark. 167, 273 S. W. 367; *Ward* v. *Magness,* 75 Ark. 12, 86 S. W. 822; 30 Am. Jur. 868; and on appeal, we will not reverse the action of the lower court in refusing to make the order *nunc pro tunc* unless there was either a clear abuse of discretion, or no substantial legal evidence to support the ruling of the lower court. In Freeman on Judgments (5th Ed.), § 136, it is stated: ''In considering the sufficiency of the evidence to sustain an order directing or refusing to direct a *nunc pro tunc* entry, an appellate court will follow the usual rule governing review of questions of fact and will not disturb the ruling below if it is sustained by any substantial evidence.''

So we leave undisturbed the refusal of the lower court to make the order *nunc pro tunc;* and thus the order of dismissal of February 21, 1938, remains unimpaired.

V. The First Acceleration. As an additional argument for the application of § 9465 of Pope's Digest, appellants contend that when the Federal Land Bank exercised its option to accelerate the mortgages in 1931, such acceleration matured the indebtedness and mortgages for all purposes, and limitations commenced at that time. This statement is true; but this right to accelerate rested in the option of the mortgagee and it could and did waive the acceleration by its own act, since there was no prejudice to the mortgagor or change of position by the mortgagor based on such acceleration. We have frequently considered the nature and effect of acceleration clauses and the waiver of acceleration. Some of such cases decided by this court are: *Farnsworth* v. *Hoover,* 66 Ark. 367, 50 S. W. 865; *McCormick* v. *Daggett,* 162 Ark. 16, 257 S. W. 358; *Johnson* v. *Guaranty Bank & Trust Company,* 177 Ark. 770, 9 S. W. 2d 3; *Helena Wholesale Grocery Company* v. *Moore,* 194 Ark. 855, 109 S. W. 2d 958; *Hodges* v. *Dilatush,* 199 Ark. 967, 136 S. W. 2d 1018; *Willett* v. *Kelley,* 203 Ark. 350, 157 S. W. 2d 34; (and for other cases, see West's Arkansas Digest, "Mortgages," § 401). In *Johnson* v. *Guaranty Bank & Trust Company, supra,* this court declared that an acceleration clause "is not treated as a forfeiture clause, but rather as a stipulation for a period of credit on condition." Therefore, not being a penalty clause, the acceleration clause is to be construed as any other provision in the instruments involved.

Acceleration clauses are of two kinds: (1) optional; and (2) automatic. As stated in a very illuminating article in the University of Pennsylvania Law Review of 1939 (Vol. 88, p. 94): "The first is the elective type, and provides that the whole of the principal sum shall become due at the *option of the mortgagee,* upon some specified default, such as a failure to pay an installment of interest or principal, or upon a delinquency of taxes, assessments or insurance premiums . . . The sec-

ond type of acceleration clause is similar in every way except that it stipulates that the whole debt *shall* become due *immediately* upon default. It is 'automatic' in its operation, in that it purports to mature the entire debt *ipso facto,* without requiring any election.'' In *Hodges* v. *Dilatush, supra,* there was involved an automatic acceleration clause; and we held that, in such a case, limitations commenced immediately on default. In the case at bar, the acceleration clause is clearly of the optional type; so the rule in *Hodges* v. *Dilatush* has no application here. In *Johnson* v. *Guaranty Bank & Trust Company* and in *Helena Wholesale Grocery Company* v. *Moore,* the acceleration clause involved in each case was of the optional type. So, what was said in those cases applies to the case at bar. In *Johnson* v. *Guaranty Bank & Trust Company,* Chief Justice HART, speaking for this court, said: ''The stipulation for accelerating the time of payment of the whole debt may be waived by the mortgagee, especially when it is made to depend upon his option.'' In *Helena Wholesale Grocery Company* v. *Moore,* the creditor had declared the entire series of notes due, and then accepted a payment from the debtor, and this court, speaking by Mr. Justice MEHAFFY, said: ''This had the effect of canceling the declaration that all of them were due.'' And again: ''The appellant had the right to exercise its option and declare all the notes due, but it had the same right, of course, to cancel that declaration, and it did so in this letter. When this declaration exercising its option was canceled, and the appellant told Moore that he would be given a reasonable time on the other notes, the notes would not then be due, as there were no other actions declaring them all due on the dates mentioned in the notes.''

The effect of our holding in the above cases is that when the acceleration clause is of the optional type, then the creditor has the privilege of declaring the acceleration and likewise of waiving the acceleration. The right to accelerate the indebtedness is exercised by the unilateral act of the creditor; and likewise, the right to waive the acceleration may be exercised by the unilateral act of the creditor, in the absence of any claim or showing

that the debtor has changed position because of the acceleration. In the case at bar, there is no allegation or showing that any of the parties changed position by reason of the acceleration being declared in 1931; and in the absence of any such showing, the Federal Land Bank had the right, by its unilateral act, to waive its acceleration and restore all the terms of the mortgages as originally executed. The 1938 order dismissing the first set of foreclosures stated that there was an agreement between the plaintiff and defendants; and the refusal of the court to change that order has been previously discussed. But even in the absence of any such agreement, still the Federal Land Bank had the right to waive its acceleration and reinstate its mortgages by its own unilateral act in the absence of any showing of prejudice to the rights of the parties; and no showing of prejudice is offered in the cases at bar. The text books and cases from other jurisdictions support our conclusion. In Wiltsie on Mortgage Foreclosure (5th Ed.), § 56, in discussing the waiver of acceleration, the following appears: "The mortgagee can, of course, voluntarily waive his election or right to elect to foreclose for the entire indebtedness upon default in payment of an installment of principal or interest. . . . And a subsequent default is not affected by a waiver of a previous default."

In Jones on Mortgages (8th Ed.), § 1513, in discussing the right to waive an acceleration clause in a mortgage, the rule is stated: "The mortgagee may waive such option at any time, even after taking steps to exercise it."

In the case of *Van Vlissingen* v. *Lenz,* 171 Ill. 162, 49 N. E. 422, the Supreme Court of Illinois, in deciding on the right of the mortgagee to waive acceleration theretofore declared, said: "Nor can it be said that, having elected to declare the entire sum due and payable on account of any default, he may not, upon such default having been removed, or for any other reason satisfactory to himself, waive his election, and permit the contract of indebtedness to continue under its original terms."

And the Supreme Court of California, in the case of *California Savings & Loan Society* v. *Culver,* 127 Cal.

107, 59 Pac. 292, had before it a case where the plea of limitations was offered just as in the case at bar; and in allowing the mortgagee to waive the election and restore the mortgage, the court said: "And the declaration of plaintiff's election by bringing the first action did not put it out of his power to waive the penalty, which he did by accepting the interest and dismissing the action."

The Illinois case and the California case are both so well considered that citation of further authorities is unnecessary. We, therefore, hold that the Federal Land Bank in the case at bar could and did waive its previously declared acceleration and reinstate its mortgages according to their original terms when the first foreclosure suits were dismissed in 1938; and that these acts could be done without requiring any consent or contract from the appellee or the mortgagee.

VI. The Second Acceleration. Finally, appellants contend that since the Federal Land Bank exercised its right of acceleration in 1931, and then waived the acceleration, the right of acceleration could not be exercised again thereafter; and that in the 1939 foreclosure, the Federal Land Bank could not foreclose for the entire debt, but only for the matured installments. There is a tendency on the part of courts of equity to relieve mortgagors from the hardships of acceleration of maturities. An annotation on this point may be found in 70 A. L. R. 993. But in the case at bar no facts or circumstances are suggested which would indicate the right of a court of equity to grant any such relief. The fact remains that the Federal Land Bank, in 1938, waived its acceleration and reinstated the mortgages for all purposes. The mortgages being thus reinstated for all purposes, and with all of the provisions in full force and effect, it necessarily follows that the mortgagee would have the right on a subsequent default to avail itself of the right of acceleration.

Finding no error, the decrees of the chancery court are in all things affirmed.