BROOKS *v.* BAKER.

4-7627                                    187 S. W. 2d 169

Opinion delivered April 30, 1945.

*Sam M. Wassell* and *Donald S. Martz,* for appellant.

*J. M. Smallwood,* for appellee.

McFADDIN, J. This appeal concerns a partition suit and a motion for order *nunc pro tunc.*

On December 29, 1943, appellant, William Brooks, filed suit for partition of certain lands in Pope county owned by Brooks and others as tenants in common. He alleged himself to be the owner of 27/66ths interest in fee. Various parties intervened as defendants, and denied that William Brooks had as great an interest as he claimed.

The history of the title is quite involved. William Brooks, Sr., father of the appellant, was the original owner. He died intestate some time about 1882, leaving a wife and ten living children, and one predeceased child who had left an heir; so, subject to the widow's dower, the estate descended into eleven shares, one of which was inherited by the appellant. Then began a series of conveyances and reconveyances between the heirs, and the heirs of the heirs, and extending over a number of years. So far as the interest of this appellant is concerned, we need mention only the following:

(1)  Immediately prior to March 10, 1892, this appellant had disposed of all of his original or acquired interest.

(2)  By deeds from R. M. Brooks and D. Altie Brooks, dated March 10, 1892, this appellant received title to a life estate in 7/66ths interest. These deeds purported to convey a fee, but, by two decrees rendered in the Pope chancery court on December 21, 1895, the deeds were reformed to show that the 7/66ths interest was only for and during the life of this said appellant, William Brooks. As to this 7/66ths life interest, we understand there is no dispute by anyone in the present appeal.

(3)  In 1895, this appellant sued J. C. Brooks, who, it was alleged, had executed a deed to this appellant for some interest, and had then destroyed the deed after delivery, but before recordation. This purpose of this 1895 suit was to have decreed and vested the interest that this appellant received from J. C. Brooks. A decree was entered in that cause in the Pope chancery court on December 12, 1895; and, as the decree now appears of record, it awarded this appellant a fee interest of 1/3 of 5/22nds, i. e., 5/66ths fee interest. We will refer to this decree as the "1895 decree," because this decree, and the interest that the appellant claims under it, are the issues of this present appeal. Appellant contends that the 1895 decree awarded him 9/66ths interest, instead of 5/66ths interest.

At all events, when the appellant filed the present partition suit in 1943 he alleged himself to own a much greater interest in the lands than his cotenants admitted, and much greater than the court found in this present case. After the partition suit had been filed, appellant discovered (he says for the first time) that the 1895 decree awarded him only 5/66ths interest. Then the appellant filed, in this partition suit, a motion to correct the 1895 decree, to give him 9/66ths fee interest. Also appellant filed, in 1944, a motion in the original 1895 case of *William Brooks* v. *J. C. Brooks,* to correct the 1895 decree *nunc pro tunc,* so as to make his interest under that decree 9/66ths instead of 5/66ths, as the decree stated. The evidence on both motions was considered together;

and on July 7, 1944, the Pope chancery court (1) entered an order refusing to correct the 1895 decree *nunc pro tunc;* and (2) entered a decree in the pending partition suit, adjudging the appellant, William Brooks, to own only 5/66ths fee interest and 7/66ths life interest. From the refusal to award him 9/66ths fee interest, and to correct the 1895 decree *nunc pro tunc* to that effect, William Brooks has prosecuted this appeal.

The appellees are the heirs at law of J. C. Brooks, who died intestate in 1917, and who was the defendant in the 1895 decree. Any fee interest now awarded appellant, William Brooks, greater than the 5/66ths interest awarded by the 1895 decree, must necessarily come from the interests of the heirs of J. C. Brooks. It will thus be seen from this somewhat detailed statement of facts that the entire contention of appellant, William Brooks, on this appeal is bottomed on his efforts—either by motion for order *nunc pro tunc,* or by this partition suit—to have the 1895 decree (which forms the foundation of his present fee title) reformed to award him the 9/66ths fee interest that he claims. The argument of the appellant may be presented under two topics.

I.  *The Refusal of the Chancery Court to Enter a Nunc Pro Tunc Order in 1944 Reforming the 1895 Decree.* The appellant, William Brooks, testified, in 1944, that his 1895 suit against J. C. Brooks was to have awarded William Brooks 1/3 of the 27/66ths interest that J. C. Brooks held in 1895. This 1/3rd would have been 9/66ths; and William Brooks explained just how J. C. Brooks had acquired said 27/66ths interest. The finding part of the 1895 decree found that the defendants, J. C. Brooks and wife, had executed and delivered to William Brooks their deed ''of one-third of their entire interest (their interest being 2½/11ths),'' and that the deed had been destroyed, but that William Brooks' title should be vested to ''said one-third part of 2½/11ths'' interest. The 1895 decree then continued in the ordering part thereof:

''It is therefore considered, ordered, and decreed by the court that all rights, title, privileges, and interests of said defendants in and to the one-third part of said

2½/11ths of the said defendants . . . be and same is hereby . . . vested in said plaintiff.''

It might have been the intention of William Brooks to receive 1/3rd of 4½/11ths interest (*i.e.*, a net 9/66ths interest), but the decree vested in William Brooks only 1/3 of 2½/11ths (*i.e.*, a net 5/66ths interest). The explanation of William Brooks is that the person entering the decree of record in 1895 made a mistake in the fractions, using ''2½/11ths'' instead of ''4½/11ths.'' To support his motion for order *nunc pro tunc*, William Brooks, in 1944, testified, and also introduced the deposition of J. C. Brooks, taken in 1895, in which J. C. Brooks stated that he had a 4½/11ths interest in the land. From all of this evidence, and other evidence to the same import, William Brooks contended that the court clerk, in entering the decree in 1895, made a mistake in copying the decree, and should have written in the decree ''4½/11ths'' instead of ''2½/11ths.''

This theory seems very plausible, but the evidence to support it is not strong enough to meet the burden of ''clear, decisive, and unequivocal'' as required by our cases. *Murphy* v. *Citizens Bank,* 84 Ark. 100, 104 S. W. 187; *Sloan* v. *Williams,* 118 Ark. 593, 177 S. W. 427; *Midyett* v. *Kerby,* 129 Ark. 301, 195 S. W. 674; *Kory* v. *Less,* 183 Ark. 553, 37 S. W. 2d 92; *Mitchell and Shaw* v. *Federal Land Bank,* 206 Ark. 253, 174 S. W. 2d 671. It was shown that the 1895 decree, as it appeared in the official records of Pope county, was in the handwriting of Hon. A. S. Hays, who in 1895 was principal of the Russellville High School, and was assisting the clerk of the court in anticipation of becoming a practicing lawyer. Mr. Hays, now and for many years a member of the bar, testified in this case in 1944. He identified his handwriting in the 1895 decree, and admitted that he could have copied the decree erroneously, since all mortals are subject to error; but Mr. Hays expressed the conviction that he had entered the decree of December, 1895, just as the precedent furnished him had shown the fractions to be. This seems most reasonable. A high school principal would certainly understand fractional interests, and would not have been

likely to make an error in copying a court decree when he was in the clerk's office to learn all he could about court matters. Besides this testimony of Mr. Hays, there was other evidence disputing appellant's position; and, furthermore, there was substantial evidence to support the defense of laches.

So, we conclude that the chancery court was correct in refusing the motion for order *nunc pro tunc,* to correct, in 1944, a decree that had been of record and unquestioned since 1895. In *Kory* v. *Less, supra,* we recognized that a court could correct clerical mistakes after the term, but even in correcting clerical mistakes, we stated that the burden was on the movant to present evidence that was "clear, competent, and convincing." See, also, Annotation in 126 A. L. R. 956 on "Correcting Clerical Errors in Judgments." What we said in *Mitchell* v. *Federal Land Bank, supra,* regarding *nunc pro tunc* orders applies here:

"Certainly the chancery court felt that the testimony, as offered by appellants in support of their motion, did not fulfill the requirements stated by this court in *Turnbow* v. *Baird,* 143 Ark. 543, 220 S. W. 826, where it was stated: 'In the case of *Midyett* v. *Kerby,* 129 Ark. 301, 195 S. W. 674, we said: "Courts should be cautious in rendering *nunc pro tunc* orders and decrees. The power may be exercised upon parol testimony alone, but the evidence should be clear, decisive, and unequivocal. It should be of sufficient character and weight to overcome the written memorial. *Bobo* v. *State,* 40 Ark. 224; *Liddell* v. *Bodenheimer,* 78 Ark. 364, 95 S. W. 475, 115 Am. St. Rep. 42; *Murphy* v. *Citizens Bank,* 84 Ark. 100, 104 S. W. 187; *Sloan* v. *Williams,* 118 Ark. 593, 177 S. W. 427." '

"At all events, the making or refusing of the order rested in the sound discretion of the lower court. *Richardson* v. *State,* 169 Ark. 167, 273 S. W. 367; *Ward* v. *Magness,* 75 Ark. 12, 86 S. W. 822; 30 Am. Jur. 868; and on appeal, we will not reverse the action of the lower court in refusing to make the order *nunc pro tunc* unless there was either a clear abuse of discretion, or no substantial legal evidence to support the ruling of the lower court."

We affirm the order of the chancery court of July 7, 1944, in refusing to change the 1895 decree.

II. *The Refusal of the Chancery Court in the Partition Suit to Decree William Brooks Entitled to a Greater Fee Interest than 5/66ths.* Finally, the appellant contends that, even without the *nunc pro tunc* relief, he should recover 9/66ths fee interest, because (as he argues): (1) he received by the decree of 1895 "one-third of the entire interest" of J. C. Brooks;; and (2) the facts show that J. C. Brooks then held 4½/11ths, (or 27/66ths) interest; and (3) the expression "one-third of the entire interest" is a sufficient description, and the fractions following in parentheses are mere surplusage. But in all of these arguments appellant is hoisted on his own petard. He must of necessity rely on the decree of 1895 as his muniment of title. That decree awarded him 5/66ths interest. He cannot rely on that decree, and collaterally attack it at the same time. That is what he is doing here. He attempted a direct attack on the decree by his motion for order *nunc pro tunc;* and the chancery court ruled against him, as we have previously discussed.

Now, in this partition case, appellant is making a collateral attack on the 1895 decree: that is, (a) he seeks to take from the finding part of the decree the words "one-third of their entire interest"; and (b) then disregard all of the ordering part of the decree as previously copied, and (c) then show by oral proof, now offered, that the ordering part of the decree was in error, because (d), he contends, that at the time the decree was rendered, in 1895, J. C. Brooks owned 27/66ths interest instead of 15/66ths, as stated in the decree. (For discussion of the finding and ordering parts of the decree, see 21 C. J. 657). Such an attack is clearly a collateral attack. In *Cassady* v. *Norris*, 118 Ark. 449, 177 S. W. 10, Mr. Justice WOOD quoted from 23 Cyc. 1063, and approved this statement:

" 'If the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be impor-

tant or even necessary to its success, then the attack upon the judgment is collateral.' '' See, also, 34 C. J. 521.

In 31 Am. Juris. 204 the elements of collateral attack are stated as follows:

"As a general rule, an attack upon a judgment is regarded as collateral if made when the judgment is offered as the basis of the opponent's claim. This rule has been applied where the attack is made upon a judgment offered in evidence in a subsequent action or proceeding, as, for example, where the judgment is offered in support of a title, or as a foundation for the application of the doctrine of *res judicata*. . . . The distinction between a direct and collateral attack upon a judgment is sometimes based upon the purpose of the proceeding or action in which the attack is made. Under this distinction, an attack is regarded as direct where the proceeding in which it is made is brought for the purpose of impeaching or overturning the judgment, and as collateral if made in any manner other than by a proceeding the very purpose of which is to impeach or overturn the judgment."

The appellant's purpose in the partition suit was to have a partition: certainly, therefore, it was a collateral attack on the 1895 decree. Since this is a collateral attack, it must fail, because the rule, as to an attack on grounds such as here made, is stated in 31 Am. Juris. 189 as follows:

"It is a general rule of law that findings of a court may not be drawn in question in a collateral proceeding. Under this rule, mistakes in findings of facts by the court usually are not grounds for a collateral attack on the judgment, and it makes no difference how erroneous the determination of facts may be. Even an inconsistency between the findings and the judgment rendered by a court of competent jurisdiction does not subject such judgment to collateral attack, and a judgment is regarded as immune from collateral impeachment on the ground that it is not supported by the findings or that no findings were made." See, also, 34 C. J. 563.

The decree of 1895 is the muniment of the title of the appellant. That decree in its ordering part gave him only 5/66ths interest. Until that decree is changed, it measures the interest of William Brooks; and he cannot attack it collaterally as here attempted.

The decree of the chancery court is affirmed.