HALL v. CASTLEBERRY.

4-6725                                      161 S. W. 2d 948

Opinion delivered May 4, 1942.

*Denver L. Dudley* and *Foster Clarke,* for appellant.

*H. A. Northcutt* and *Oscar E. Ellis,* for appellee.

HOLT, J. Appellee, Rex Castleberry, brought suit in the Fulton chancery court against J. A. Hall and Josie Hall, his wife, making two Jonesboro banks garnishees.

He alleged in his complaint that on April 14, 1936, he obtained a judgment against the Halls in a foreclosure suit No. 1098 in the amount of $1,251.65, copy of the alleged judgment was made a part of the complaint.

He further alleged sale of the land under the foreclosure decree; that the proceeds from the sale amounting to $900 was duly credited on the judgment, and that a deficit, or balance, of $602.70 was left due and unpaid on said judgment.

Appropriate allegations for writs of garnishment were made, writs issued and served and the Citizens Bank of Jonesboro answered that it had $825.48 to the credit of J. A. Hall.

April 8, 1941, the Halls appeared specially and filed motion questioning the court's jurisdiction and alleged lack of service on them. Upon a hearing the court overruled this motion, whereupon, appellants answered preserving their right to object to the court's jurisdiction, lack of service on them, and saving their exceptions to the action of the court in overruling their motion, filed answer denying every material allegation of the complaint and also denied that there was any valid deficiency judgment existing against them in favor of appellee Castleberry.

Upon a trial the court found the issues in favor of appellee and this appeal followed.

The record discloses that in 1933 the Halls purchased land from Rex Castleberry for a consideration of $1,050. In payment they executed notes in favor of Castleberry secured by a mortgage on the land. Shortly after the execution of these notes, they were sold and assigned to G. T. Cunningham by Castleberry. Upon the failure of the Halls to pay the notes, Cunningham filed foreclosure suit on March 10, 1936, making the Halls and Rex Castleberry, the original mortgagee, defendants. This suit was numbered 1098. On the same day suit was filed Castleberry and the Halls entered their appearance.

The record further reflects that the court below entered a *nunc pro tunc* order in case No. 1098 as follows: "The above decree in case No. 1098 should have been recorded on April 14, 1936, and is now entered of record *nunc pro tunc*." And after the recording of the decree under this *nunc pro tunc* order, there appears this notation on that decree: "Pd. on Judgment by sale of land April 14, 1936, $900 this 2/1/41—Rex Castleberry. Attest: Lester Collins, Clerk."

The decree entered under the *nunc pro tunc* order recites that Rex Castleberry as plaintiff was given a judgment against the Halls for $1,251.65, foreclosure ordered, and a commissioner appointed to carry out the decree, and this *nunc pro tunc* order appears to have been made January 27, 1938.

On April 8, 1941, after the present suit had been filed another *nunc pro tunc* order was made in foreclosure suit No. 1098 in which it is recited: ". . . that this suit was originally filed by and in the name of G. T. Cunningham as plaintiff but that before said cause proceeded to judgment and decree on the date of April 13, 1936, this defendant had been substituted as party plaintiff and the same should have been entered in his name as such plaintiff but that said order of the court then made was not entered of record but should now be entered as of that date.

"It is, therefore, by the court considered, ordered and adjudged and decreed that Rex Castleberry, one of the original defendants herein, be and he is hereby substi-

tuted as the plaintiff in place of the original plaintiff, G. T. Cunningham, and that this judgment, decree and order be now entered as of the date of April 13, 1936, the date same was originally made but not then placed of record herein.''

It is conceded that in the instant case docketed as case No. 1327, and wherein Rex Castleberry, appellee, appears as plaintiff and J. A. Hall and Josie Hall, appellants, appear as defendants, that no service of summons either personal or constructive, has been had upon either of appellants and that appellants are nonresidents of the state of Arkansas.

There can be no question but that if a valid judgment were obtained against the Halls by Rex Castleberry in the original foreclosure suit No. 1098, the land sold and proper credit given on the decree for the sale price, then the money of the Halls held by the garnishee bank would be subject to be applied on any deficiency judgment that might be due Castleberry from the Halls without personal or constructive service on the Halls. If, however, there were no such valid judgment obtained against the Halls in suit No. 1098, then the garnishment obtained against the Halls must fail for lack of service on the Halls in the instant case.

The purpose of a *nunc pro tunc* order, and the rule governing its entry is stated in *Citizens Bank* v. *Commercial National Bank,* 118 Ark. 497, 177 S. W. 21, as follows: ''The purpose of a *nunc pro tunc* order is to make the record reflect the transaction that actually occurred and as often announced by this court, 'The authority of the court to amend its record by a *nunc pro tunc* order is to make it speak the truth, but not to make it speak what it did not speak but ought to have spoken.' *Lourance* v. *Lankford,* 106 Ark. 470, 153 S. W. 592, Ann. Cas. 1915A, 520.''.

In January, 1938, in the instant case, the court below reinstated by *nunc pro tunc* order a foreclosure decree rendered April 14, 1936, but which had been omitted from the record; and on April 8, 1941, subsequent to the filing of the instant suit, the lower court by the other

*nunc pro tunc* order, *supra,* substituted Rex Castleberry, appellee here, as plaintiff for G. T. Cunningham, the original plaintiff in case No. 1098.

Appellants first complain because they were given no notice of the *nunc pro tunc* orders, *supra.* In the instant case, the record on the *nunc pro tunc* orders is silent as to notice. Since, however, the attack on these orders by appellants is collateral, the orders may not be attacked by showing that notice was not given. This court so held in *Miller Land & Lumber Company* v. *Gurley,* 137 Ark. 146, 208 S. W. 426, where it is said: "Appellant answers . . . that the *nunc pro tunc* order entered by the court, was void on account of notice to appellant not being given, and it was shown by oral testimony at the hearing below that notice was not in fact given to appellant. The record of the order is silent as to notice. This is purely a collateral attack on the validity of the *nunc pro tunc* order of May 7, 1917, and it has been decided by this court that the judgment of a court correcting a former entry cannot be attacked collaterally by showing that notice was not given. *King* v. *Clay,* 34 Ark. 291. Even on appeal, where the record is silent, the presumption is indulged that notice was given."

We have many times held that courts possess continuing power over their records not limited by lapse of time. The chancellor, who tried the instant case, was chancellor of the district comprising Fulton county at the time the foreclosure suit No. 1098 was instituted and tried, and has continued as chancellor to the present time. In the absence of evidence to the contrary, the presumption is that the *nunc pro tunc* orders, *supra,* were entered and based upon satisfactory evidence, or personal recollections of the chancellor as to the court proceedings, in case No. 1098, *supra.*

In *Bobo, Adm'r,* v. *State, use, etc.,* 40 Ark. 224, this court said: "Courts have a continuing power over their records not affected by the lapse of time. Should the record in any case be lost or destroyed, the court whose record it was possesses the undoubted power, at any time afterwards, to make a new record. In doing

this it must seek information by the aid of such evidence as may be within its reach tending to show the nature and existence of that which it is asked to re-establish. There is no reason why the same rule should not apply, when, instead of being lost, the record was never made up, or was so made up as to express a different judgment than the one pronounced by the court. Hence the general rule that a record may be amended, not only by the judge's notes, but also by other satisfactory evidence. . . .

". . . we think it clear, upon authorities, that the court may make such amendments upon any legal evidence, and they are the proper judges as to the amount and kind of evidence requisite in each case to satisfy them what was the real order of the court, or the actual proceedings before it, etc. When there is nothing more to rely on than the memory, the court will act, if at all, with great caution."

Having reached the conclusion that the *nunc pro tunc* orders in question were within the powers of the trial court to make, and that there is an outstanding valid judgment against appellants in favor of appellee on which a balance of $602.70 remains due and unpaid, the decree is affirmed.