RICHARDSON v. SALLEE.

4-7451                                              183 S. W. 2d 508

Opinion delivered November 13, 1944.

S. L. *Richardson,* for appellant.

*George M. Booth,* for appellee.

McFaddin, J. The decree, challenged by the appellant on this appeal, was rendered by the chancery court on March 28, 1944; but to understand the issues it is necessary to state in some detail the history of this litigation.

In December, 1939, appellant brought suit against appellees to quiet appellant's title to 61.08 acres of land on Black River in Randolph county. Appellees filed answer and cross-complaint, claiming to be the owners of 2¼ acres of the land, by reason of (1) reservation made in 1922 in the line of title under which appellant claimed, and (2) acquisition by appellees of the said reserved 2¼ acres.

On June 28, 1940, a decree was rendered awarding the appellees the 2¼ acres, and the description of this land in the decree was the same as in all of the deeds, being:

". . . A strip of land extending along the left bank of Black River, three rods back from the high bank of said river, being in length 121 rods and containing 2¼ acres, and running across the boundary of" the 61.08 acres described in appellant's complaint.

Appellant prayed an appeal to the Supreme Court from the said decree of June 28, 1940, but the appeal was never perfected. On September 12, 1942, appellant filed a motion for a new trial alleging that, after the lapse of more than six months from the date of the decree ap-

pellant had discovered for the first time (and then by actual survey of the land) that the high ground along the left bank of Black River was 129 rods instead of 121, as mentioned in the description. By reason of this additional eight rods, appellant contended, in the said motion, that the land could not be definitely located, and therefore the reservation was void, and that there should be a new trial of the entire case. Appellant alleged in the motion that this fact (of the additional eight rods) could not have been discovered with due diligence prior to the former decree. To this motion for a new trial, appellee filed a demurrer; and on November 27, 1942, the chancery court sustained the demurrer, and appellant secured leave to amend.

Then on September 29, 1943, appellant filed her pleading entitled "Petition for injunction; amendment to motion for new trial, motion that motion for new trial and amendment thereto be treated as bill of review." In this pleading, appellant (1) set out in detail the history of the entire title and reservation; (2) again alleged that the high ground was 129 rods long, instead of 121 rods; (3) stated that this fact could not have been discovered prior to the former trial or within six months thereof; and (4) claimed that since the high ground was 129 rods long, it was impossible to determine the beginning point of the 121-rod tract reserved, and, therefore, the reservation was void. Appellant also (5) alleged that when the clerk entered the decree in 1940, he had omitted from the record one of the calls in the description of the land, and for this reason there should be a new trial granted. While this pleading was much more detailed than the motion of September 12, 1942, the only new point was the one number (5) above, relative to omission of a call in the description of the land.

This petition for bill of review was likewise met by a demurrer on behalf of appellees. The chancery court sustained the demurrer on March 28, 1944; and appellant refused to plead further, and final decree of dismissal was entered on March 28, 1944, which is the decree here challenged.

I. *The Newly Discovered Evidence.* In 19 Am. Juris. 291, it is stated:

"A bill of review based upon newly discovered evidence is designed to accomplish the same purpose as a petition for a rehearing in chancery or a motion for a new trial at law."

So, without discussing all the historical and academic distinctions that might exist between a bill of review under the equity practice, and a motion for new trial under subdivision 7 of § 1536 of Pope's Digest, we proceed to a disposition of this case. In either event, (whether bill of review in equity practice, or motion for new trial under the statute), the following rules, *inter alia,* are applicable:

1. The pleading is addressed to the sound discretion of the trial court. For bill of review cases, see *Webster* v. *Diamond,* 36 Ark. 532; *Smith* v. *Rucker,* 95 Ark. 517, 129 S. W. 1079, 30 L. R. A., N. S., 1030; for motion for new trial cases, see *Forsgren* v. *Massey,* 185 Ark. 90, 46 S. W. 2d 20; *St. L., I. M. & S. Ry. Co.* v. *Dague,* 118 Ark. 277, 176 S. W. 138, Ann. Cas. 1917B, 577.

2. The newly discovered evidence must be material, not merely cumulative, but sufficient to change the result of the original trial. For bill of review case, see *Killion* v. *Killion,* 98 Ark. 15, 135 S. W. 452; for motion for new trial case, see *T. & P. Ry. Co.* v. *Smith,* 91 Ark. 362, 121 S. W. 282.

3. The newly discovered evidence must be such as could not have been discovered at the original trial by the exercise of reasonable diligence. For bill of review cases, see *Bartlett* v. *Gregory,* 60 Ark. 453, 30 S. W. 1043; *Davis* v. *Hale,* 114 Ark. 426, 170 S. W. 99, Ann. Cas. 1916 D, 701; *Jackson* v. *Becktold Ptg. & Bk. Mfg. Co.,* 97 Ark. 415, 134 S. W. 629; *Long* v. *Long,* 104 Ark. 562, 149 S. W. 662. For motion for new trial cases, see *Chandler* v. *Lazarus,* 55 Ark. 312, 18 S. W. 181; *Arkadelphia Lumber Co.* v. *Posey,* 74 Ark. 377, 85 S. W. 1127; *Dixon* v. *Bullock,* 206 Ark. 192, 174 S. W. 2d 449.

When appellant's pleading is tested by these essentials, we are of the opinion that it failed to contain sufficient allegations for either a bill of review or a new trial, and that the trial court did not abuse its discretion in the decree here assailed. The newly discovered evidence in this case, as alleged by appellant, consists of the fact that appellant discovered by a survey that the high ground on the left bank of Black River was 129 rods long instead of 121 rods, as stated in the reservation. In other words, appellant alleges that some time after the decree of 1940 appellant had the land surveyed and found that the high ground was eight rods longer than had been thought at the time of the trial. That is the only newly discovered evidence alleged in this case.

No reason is advanced as to why appellant could not have made this survey before the original trial in 1940. Reasonable diligence would have suggested such a survey, particularly when the land was along the bank of a river and the description was in reference to the river. The description of the 2¼ acres was made in a deed in 1922. The case was tried originally in 1940, eighteen years after the description. In those intervening years the river could have changed its course enough to account for the difference of eight rods.

The pleadings suggest that there was a survey prior to 1939. In the original complaint (filed by appellant in 1939) it was alleged that since 1926 all of the 61.08 acres of land (which included the 2¼ acres in the reservation) had been "enclosed on the west by Black River, on the south and east by a wire fence, and also on the north, or what was thought to be the north boundary, it was enclosed by a wire fence; but in the spring of 1935, upon being surveyed by the county surveyor, the north boundary was re-established several feet north of what was formerly thought to be the north boundary line, and a new fence was placed on the north boundary line. . . ." Thus, it appears by appellant's own pleading that the 1935 survey was made before the original suit was filed in 1939. Appellant could have discovered in 1935 the length in rods of the river front land reserved in the deed.

It is also evident that, from appellant's own allegations in the original complaint (filed in 1939, there had been a survey in 1935, at which time it was found that the north boundary line was farther north than theretofore thought. The moving of the fence line to the north would serve to increase the length in rods, beyond 121, of the high bank on the river front. Just how much additional length in rods we cannot say, because appellant did not state definitely how far north the fence was moved. For every rod that the fence was moved north, the number of rods on the river bank would be lengthened. But it is clear that the 2¼-acre tract begins at the intersection of Black River with the northern boundary line of the 61.08 acres, and extends south along Black River 121 rods, and has a depth of three rods.

We fail, therefore, to see (a) how it can be urged that the excessive length of the strip was not discovered before the original suit, or (b) how reasonable diligence was exercised. These facts being true, the resurvey in 1942 did not constitute newly discovered evidence within the essentials allowing a new trial or bill of review. The facts that we have mentioned herein appeared on the face of the record. Some of them were facts alleged by appellant in her own pleadings. Therefore, we hold that the chancery court did not abuse its discretion in sustaining the demurrer to appellant's petition in 1943, and in refusing any relief to the appellant.

II. *Omission of One Call in Description of Appellant's Land.* Appellant argues that in the decree made by the chancery court in 1940, the lands were indefinitely described, in that one call, as contained in the complaint, was omitted from the decree as it appears of record. Without lengthening the opinion by detailing the description of the lands, and showing the omitted call, it is sufficient to state that this omission was clearly a clerical misprision in copying the description; and the mistake was made either by the clerk of the court who copied the decree, or by the attorney who prepared the precedent. In either event, and since the rights of third parties are not alleged to be affected, a motion for order *nunc pro*

*tunc* would have afforded proper relief for the omitted call. A new trial or bill of review was not the proper relief. In 30 Am. Juris. 866, in discussing the power of a court to correct its records by *nunc pro tunc* entries, it is stated:

"The power of a court to amend records of its judgments by correcting mistakes, or supplying defects of omissions, therein must be distinguished from the power of the court to modify or vacate an existing judgment. A court may rightfully exercise its powers merely to amend or correct the record of the judgment, so as to make it speak truthfully, under circumstances which would not at all justify it in exercising its power to vacate the judgment."

The correction of the decree by *nunc pro tunc* does not extend the time for filing bills of exceptions. *Hershy v. Baer,* 45 Ark. 240. Many of our cases on *nunc pro tunc* orders may be found in West's Arkansas Digest, "Courts," § 114.

For the reasons stated, it follows that the decree of the chancery court is in all things affirmed.