EILAND, *et al. v.* PARKERS CHAPEL METHODIST CHURCH.

5-159                                         261 S. W. 2d 795

Opinion delivered November 2, 1953.

*Walter L. Brown,* for appellant.

*Claude E. Love,* for appellee.

ED. F. McFADDIN, Justice. The location of the boundary line between the Church property and the Eiland

property resulted in this litigation, which now reaches this Court in (a) an appeal from a *nunc pro tunc* order, and (b) an appeal from the refusal of the Court to grant a bill of review. We give the chronology of events:

(1) On September 6, 1950, Parkers Chapel Methodist Church[1] (hereinafter called "Church") filed suit against Mr. and Mrs. Eiland (sometimes hereinafter called "Defendants") in the Chancery Court, alleging, *inter alia,* that the defendants had constructed a fence which encroached on the Church property, and praying that the defendants remove the fence and return to the Church the possession of a triangular strip, being approximately 240 feet on each side, with a base of approximately 30 feet. The defendants denied that the Church owned the disputed strip, and pleaded title, adverse possession, etc.

(2) On December 15, 1950, the cause was tried in the Chancery Court, and a decree rendered which awarded to the Church the disputed triangular tract. A tract was described in the decree in a long description of several hundred words, and the decree then used this language:

"IT IS THEREFORE considered, ordered, adjudged and decreed by the Court that the title to all of the lands in dispute in this cause and which is situated South of the Old Fence, as originally situated as described above, be and the same is hereby quieted and confirmed in Plaintiffs; . . ."

(3) On June 26, 1951, the defendants (*i.e.* the Eilands) filed *their petition* for a *nunc pro tunc* order, claiming that the decree of December 15, 1950, failed to correctly describe the disputed strip, in that the decree took too much land from the defendants.

(4) On February 15, 1952, the Church filed *its petition* for a *nunc pro tunc* order, claiming that the decree of December 15, 1950, failed to correctly describe the dis-

---

[1] The Trustees of the Church made affidavit that they were authorized by the Quarterly Conference to bring the suit, and no question was made as to proper parties.

puted strip, in that the decree did not award the Church sufficient land.

(5) On November 3, 1952, the Chancery Court heard the two petitions for *nunc pro tunc* and entered an order in accordance with the petition of the Church. From that order of November 3, 1952, the defendants have appealed; and their contention will be hereinafter discussed under the Topic, *"Nunc Pro Tunc* Order".

(6) On January 21, 1953, the defendants (*i.e.* the Eilands) filed their petition for bill of review, alleging: (a) that after the lapse of time for appeal from the original decree of December 15, 1950, the Court—by order *nunc pro tunc*—had materially changed the boundary line described in the 1950 decree; (b) that the defendants had newly discovered evidence which would prove that the line was erroneous as designated in the *nunc pro tunc* order; and (c) that the defendants' right of appeal had been lost without any fault. The Church resisted the petition for bill of review; and after a hearing, the Court, on April 3, 1953, denied the bill of review. From such denial, the Eilands appeal, and their contention will be discussed under the heading, "Bill of Review."

### Order Nunc Pro Tunc

We have a number of comparatively recent cases, each involving the entry of an order *nunc pro tunc,* and some of these cases are *Hall* v. *Castleberry,* 204 Ark. 200, 161 S. W. 2d 948; *Mitchell, et al.* v. *Federal Land Bank,* 206 Ark. 253, 174 S. W. 2d 671; *Richardson* v. *Sallee,* 207 Ark. 915, 183 S. W. 2d 508; *Brooks* v. *Baker,* 208 Ark. 654, 187 S. W. 2d 169; and *Irby* v. *Drusch,* 216 Ark. 130, 224 S. W. 2d 366. In *Hall* v. *Castleberry,* we quoted from earlier cases in this language:

" 'The purpose of a *nunc pro tunc* order is to make the record reflect the transaction that actually occurred and as often announced by this court, "The authority of the court to amend its record by a *nunc pro tunc* order is to make it speak the truth, but not to make it speak what it did not speak, but ought to have spoken." *Lourance* v.

*Lankford,* 106 Ark. 470, 153 S. W. 592, Ann. Cas. 1915A, 520.' ''

In making the *nunc pro tunc* order in the case at bar, the Court was obviously describing the land that the Court awarded to the Church in the decree of December 15, 1950, but which, by clerical misprision, failed to be properly described. We also have several cases in which it is recognized that the recollection of the Trial Judge is an important factor in determining what was the original decree sought to be entered by order *nunc pro tunc.* See *Bertig* v. *Grooms,* 164 Ark. 628, 262 S. W. 672; *St. Louis-San Francisco R. Co.* v. *Hovley,* 196 Ark. 775, 120 S. W. 2d 14; *Bobo* v. *State,* 40 Ark. 224; and *Hall* v. *Castleberry, supra.* The same Trial Judge who entered the *nunc pro tunc* order of November 3, 1952, had tried the case and viewed the premises herein involved, and had made the decree of December 15, 1950. Both in the decree and the order *nunc pro tunc,* there is the recitation that the Trial Judge, with the consent of the parties, made a personal examination of the "disputed lands and premises involved herein." Thus, we have the *nunc pro tunc* order supported by the Judge's personal recollection. Under the rationale of the holdings in our cases, above listed, we sustain the *nunc pro tunc* order herein challenged.

### Bill of Review.

In their bill of review, the Eilands claimed: that they took some pictures of the premises in 1946 or 1947; that these pictures could not be found at the time of the trial in 1950; that they had recently been discovered; and that they were tendered to the Court in the bill of review. The Eilands claimed that these pictures showed that the property line should not be located as it was, either in the original decree, or in the *nunc pro tunc* order. Thus, the bill of review claimed to be based on newly discovered evidence.

In *Richardson* v. *Sallee,* 207 Ark. 915, 183 S. W. 2d 508, in discussing a bill of review on the ground of newly discovered evidence, we listed three rules, *inter alia,* as applicable to the granting of such a review:

"1.   The pleading is addressed to the sound discretion of the trial court.  For bill of review cases, see *Webster* v. *Diamond,* 36 Ark. 532; *Smith* v. *Rucker,* 95 Ark. 517, 129 S. W. 1079, 30 L. R. A., N. S. 1030; . . .

"2.   The newly discovered evidence must be material, not merely cumulative, but sufficient to change the result of the original trial.  For bill of review case, see *Killion* v. *Killion,* 98 Ark. 15, 135 S. W. 452; . . .

"3.   The newly discovered evidence must be such as could not have been discovered at the original trial by the exercise of reasonable diligence.  For bill of review cases, see *Bartlett* v. *Gregory,* 60 Ark. 453, 30 S. W. 1043; *Davis* v. *Hale,* 114 Ark. 426, 170 S. W. 99, Ann. Cas. 1916D, 701; *Jackson* v. *Becktold Ptg. & Bk. Mfg. Co.,* 97 Ark. 415, 134 S. W. 629; *Long* v. *Long,* 104 Ark. 562, 149 S. W. 662. . . ."

Tested by these three rules, we cannot say that the Court abused its discretion in denying the bill of review.  The Trial Judge had personally observed the disputed lands and premises and had the pictures before him when he heard the evidence offered in support of the bill of review, so he knew just how material these pictures were to the case.  Furthermore, there is a serious question as to the diligence on the part of the Eilands in failing to find the pictures prior to the 1950 trial, or to mention them at that trial.

We affirm the Chancery Court in the rulings here challenged.