Gerald D. BARNES *v.* PEARSON TERMITE
AND PEST CONTROL, INC. and Elmer T. PEARSON,
Individual

79-82                                    587 S.W. 2d 823

Opinion delivered October 8, 1979
(Division I)

[Rehearing denied November 13, 1979.]

*Herby Branscum, Jr.,* for appellant.

*Joe Cambiano,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Gerald D. Barnes filed a suit against Elmer T. Pearson, appellee herein, on December 13, 1976, seeking to recover one-half of the assets of Pearson Termite & Pest Control, Inc. and an accounting for profits subsequent to February, 1976. The corporation was formed on October 28, 1974, and Barnes and Pearson were the sole stockholders, each owning one-half of the capital stock of the corporation. Barnes alleged that Pearson had operated the business, without any accounting to Barnes, since February, 1976, when Barnes had become disabled, and that Pearson had converted the assets of the corporation to his own use under a new name. Pearson filed a general

denial in answer to the original complaint, except that he admitted that the two parties were the sole stockholders of the corporation. By an amendment to the complaint, Barnes asked that Pearson be declared trustee of all funds earned by Pearson Termite & Pest Control, Inc. since October 1, 1976, and alleged that an accounting for, and division of, such funds should have been made. In his answer to the amendment to the complaint, Pearson alleged that Barnes had received funds for franchise sales for which he should be required to account and claimed the right to set off one-half of these receipts against any amount due Barnes.

On June 1, 1977, a decree was entered upon agreement by the parties. The decree contained the following findings: that Barnes and Pearson were each entitled to one-half of the corporation assets; that injunctive relief should be provided so that each could operate his respective business after division; that the corporate name and structure should become the property of appellant; that Pearson should pay appellant $1,700; that the physical assets of the corporation should be divided between the parties, that all accounts should be divided equally, but, if the parties were unable to agree upon a division, a commissioner would be appointed; that each party might maintain his franchise agents; and that each party would be enjoined from serving the accounts belonging to the other. On June 22, 1977, Pearson filed a notice of appeal from this decree, but the appeal was never perfected.

On June 28, 1977, Barnes filed a petition alleging that Pearson had violated the terms of the decree and asking that Pearson be held in contempt of court and that steps be taken to protect the rights of Barnes. After Pearson filed a motion to require Barnes to make his pleading more definite and certain as to matters alleged to be in violation of the decree, Barnes filed an amendment to his petition. In that pleading, he alleged that Pearson had failed to divide the assets of the corporation with him, had failed to bring the books and documents belonging to the corporation to him, had failed to pay the judgment for $1,700, was continuing to use the corporate telephone and telephone number and was contacting customers and accounts that were being serviced by Barnes. Pearson answered, denying these allegations.

Thereafter, on August 5, 1977, Barnes filed another petition alleging that Pearson had failed to comply with the decree of June 1, 1977, which ordered Pearson to divide the assets of the corporation with Barnes and that there were items of personal property in Pearson's custody and possession that should be sold at public auction and the proceeds divided equally between Barnes and Pearson. Then, on December 20, 1977, Barnes filed another petition, alleging that the cancelled checks and bank statement for May, 1977, on an account in the name of "Elmer Pearson Special Account NO. 11-788-57," which had been furnished pursuant to an order of the chancery court upon appellant's motion, showed a balance of more than $18,000 when the case was tried in June, and that this balance was greater than the amount represented as the balance by Pearson at the trial in June, 1977.

No testimony except that of Barnes and Pearson at the original trial is included in the transcript. Barnes testified that when he commenced working for the corporation in December, 1974, it was servicing 320 accounts and, in addition, had franchise dealers who used the corporate name, license and insurance, and received 20 percent of the gross income on the accounts serviced by them. He also testified that when he had to quit working, on doctor's orders, in February, 1976, because of a back problem, the parties agreed that they would divide the profits as of June, 1976, and that the profits thereafter would be put back into the corporation for Pearson to use as he saw fit, but that Barnes was to get the income from one-half of the franchise dealers. According to Barnes, he learned in November, 1976, that Pearson had started operating the business under a new name (Pearson Pest Control), and that Pearson had changed the bank account so it was carried under the title, "Elmer Pearson Special," without authorization from the board of directors. Barnes said that he could not tell anything about the financial picture of the corporation from the documents furnished by Pearson, and that, since November, 1976, Pearson had chosen the franchise checks he wanted to keep and had sent Barnes the ones that he wanted Barnes to have. Barnes stated that the value of a pest control business is determined by multiplying its annual income by a multiplier ranging from six to

ten, depending upon the reputation of the company. He said that the value of this corporation was $30,000. Barnes testified that he never intended to give his half of the corporation to Pearson.

Pearson confirmed the agreement on division of the income from the franchise dealers made when Barnes became incapacitated. He said that there was no money in the corporation's bank account and that, when the company's accountant said that Barnes and Pearson were each entitled to $852, Barnes refused to accept that as his share of the corporation. Pearson testified that he had formed a new company named "Pearson Pest Control," had obtained a new license in October, 1976, and had, since that time, operated his pest control business under this name and license. He said that Barnes had to know that he was going to operate under a new name because he had told Barnes that if he didn't buy Barnes out, he was going to pull out of the corporation. Pearson recalled, upon cross-examination, that on March 15, 1977, he had testified in a deposition that there had been a balance of $6,124.23 in the Pearson Termite & Pest Control account, which was, at the time of the trial, in the "new" bank account. In his testimony at the trial, Pearson denied that this amount had been in the account at that time.

We have great difficulty in following Pearson's testimony about this account. He denied having transferred a balance of $6,124.23. The following question was asked and response given on cross-examination:

Q. Well, I asked you on March 15th if there was any money in the account when you pulled out and took all of the accounts with you on October 28th, 1976 and you said, "Yes, there is. It is $6,124.23 is what I got."

A. We took that off the check book cause I can't remember.

Pearson then testified that he wrote the last check on the corporate account on January 27, 1977 and that there was $6,-124.43 in that account when he "pulled out of the corporation." Thereafter, the cross-examination went as follows:

Q. When did you close that account?

A. When I cashed — Just a minute. I cashed it out when I closed this check that you had here. I had to put some money in there even to make enough to do it.

The Court: I don't understand what you are saying sir?

Mr. Branscum [Appellant's attorney]: I don't understand either.

The Court: Did you write a check for $6,124.43?

Mr. Pearson: No.

The Court: What are you saying, Mr. Pearson; you've lost me ever since you've been up here?

Mr. Pearson: When I pulled — before I pulled out when I went over there and tried to buy him out, I started a new account.

The Court: At that time there was $6,124.43 in the old account?

Mr. Pearson: No, Sir.

The Court: What was there in the corporation account, Mr. Pearson? Gentlemen, I'm serious, I have never seen a situation of trying to look at the financial structure of the corporation. We've had the accountant and we don't have the balance sheet or the profit and loss statement. These are absolutely necessary to make any determination of the structure of the corporation.

Mr. Cambiano [Appellee's attorney]: The accountant has testified as to the assets of the corporation.

The Court: Without the benefit of the balance sheet or the profit and loss statement.

Mr. Cambiano: But he had the material that these came from.

The Court: I have examined these, Mr. Cambiano. I can't tell what checks these were written on after he completed his testimony, I could not know. He said it was on Pearson Pest Control. I thought we were dealing with Pearson Pest Control, Inc. I have not seen anything on the corporation. And sometime gentlemen, somebody is going to have to furnish me some information before I can make any kind of determination. I'm not trying to be facetious about this.

Pearson then testified that the accounts were "put together," without his consulting anyone, that he made an offer which Barnes would not accept, so he "pulled out," as he told Barnes he would, and took the money and started paying bills. This exchange took place between the chancellor and Pearson:

The Court: You put the income in one account and paid the expenses out of the other?

Mr. Pearson: Well, it was all mine anyway.

The Court: No, it wasn't sir. I think that is what the problem is.

Mr. Pearson: Okay, it wasn't mine then.

A hearing on the petitions filed by Barnes following the original decree was held on June 1, 1978. The chancellor then ruled that Barnes was not entitled to offer evidence about the financial activities of the business from the time Pearson commenced his own business until the matter was initially determined on June 1, 1977. The chancellor stated that, on the record before him on that date, he had held that the corporation had, for all practical purposes, been terminated on November 1, 1976.

Barnes then proferred the testimony of Robert Hill, a certified public accountant, who had made an investigation of the accounts of Pearson Termite & Pest Control, Inc., Pearson Pest Control and Elmer Pearson Special Account. He said that on November, 1, 1976, there had been $6,123.93 in

the Elmer Pearson Special Account, which had been opened on September 28, 1976 with $6,123.50. He found approximately $100 in the account of Pearson Termite & Pest Control, Inc., on December 1, 1976. He said that on June 1, 1977, there was $18,581.77 on deposit in the Elmer Pearson Special Account, which came from business deposits, and that there had been checks written on that account for $8,100 for capital expenditures and $1,400 for personal expenditures. He found documents previously presented by Pearson's accountant of little help in arriving at the financial structure of the business. According to Hill, after taking into consideration operating costs, each stockholder would have been entitled to approximately $13,300 on June 1, 1977, based on the figures he had previously stated.

On August 2, 1978, the chancery court entered an order finding that Barnes was not entitled to submit proof about the earnings of Pearson Termite & Pest Control, Inc. since November 1, 1976, and that the court's order of June 1, 1977, dissolving the corporation and dividing its profits as of November 1, 1976, should not be altered. Based upon these findings, the court ordered that appellant's petition seeking a division of profits from November 1, 1976, to June 1, 1977, be dismissed.

Appellant first contends that the chancellor erred in failing to hold appellee in contempt for failing to comply with the court's orders. We have considerable difficulty in treating this point. Appellee says that a hearing on the petition to cite him for contempt was held on August 3, 1978, and that the chancery court declined to take action on this petition. There is no abstract of any such hearing or any order touching on this matter. In any event, it was appellant's responsibility to obtain a ruling on this petition and if there was action adverse to him to bring up the record on the hearing, including the court's order. *Arkansas State Hwy. Com'n.* v. *Stupenti*, 222 Ark. 9, 257 S.W. 2d 37. In the absence of any order of the court, we are really not in a position to pass on the question. *Brown* v. *Patterson Construction Co.*, 235 Ark. 433, 361 S.W. 2d 14; *Burns* v. *Local Trademarks, Inc.*, 222 Ark. 855, 263 S.W. 2d 483; *North River Ins. Co. of N.Y.* v. *Thompson*, 190 Ark. 843, 81 S.W. 2d 19.

It was the responsibility of appellant to obtain a ruling

by the chancery court on his petition. *North River Ins. Co. of N.T.* v. *Thompson,* supra; *Akins* v. *Pierce,* 263 Ark. 15, 563 S.W. 2d 406. If the chancery court refused to act on the petition, appellant could have applied to this court for mandamus to the trial court to do so. *State* v. *Nelson,* 246 Ark. 210, 438 S.W. 2d 33; *McCreary* v. *Rogers,* 35 Ark. 298. See also, *Wyatt* v. *Magee,* 3 Ala. 94. The burden also rested upon appellant, on appeal, to demonstrate error on the part of the trial court. *Holt* v. *Holt,* 253 Ark. 456, 486 S.W. 2d 688. Refusal of a trial court to punish an alleged contemnor will be reviewed by an appellate court only to determine whether there has been an abuse of discretion. *State Grand Lodge of Pennsylvania* v. *Morrison,* 277 Pa. 41, 120 A. 769 (1923); *In re Ensslen's Estate,* 163 Pa. Super. 246, 60 A. 2d 429 (1948); *Engleman* v. *Engleman,* 145 Colo. 299, 358 P. 2d 864 (1961); *Haynes* v. *Haynes,* 168 Kan. 219, 212 P. 2d 312 (1949); *In re Sobol,* 242 F. 487 (2 Cir., 1917); *Yancey* v. *Mills,* 210 Ga. 684, 82 S.E. 2d 505 (1954). On the record before us, we are unable to say that the trial court erred in this respect or abused its discretion on the matter of contempt.

Appellant also argues that the chancellor erred in denying appellant's request to require an accounting and division of the funds derived from the assets and customers of the corporation for the period from November 1, 1976 to June 1, 1977. He says that the corporation was dissolved by the decree of June 1, 1977, and, therefore, the assets of the corporation on that date should have been divided equally between appellant and appellee as of that date, but that the chancellor orally stated that the division of assets should have been made as of November 1, 1976.

We have some difficulty in dealing with this point. Appellant's original complaint was filed on December 13, 1976. Trial was had on April 28, 1977. The chancellor stated that he had found, when the decree was entered on June 1, 1977, that Pearson Termite & Pest Control, Inc. had ceased to exist on November 1, 1976, but the decree does not contain a specific recitation of this finding. The decree entered June 1, 1977, provided that the corporate structure should become the property of Barnes, that Pearson should pay Barnes $1,-700, and that the accounts should be divided equally. As we

understand the decree, the accounts that were to be divided were simply those of the customers of the business, which included payments subsequently made by these customers for services already rendered and amounts to be paid for subsequent services. No appeal was taken by appellant from that decree. The time for giving notice of appeal expired July 1, 1977. There was no pleading of any kind filed by appellant within the 30 days allowed for appeal except for the petition that Pearson be held in contempt of court. That petition stated conclusions only and did not specify the respects in which Pearson had violated the decree.

Appellant has not attempted to proceed under Ark. Stat. Ann. § 29-506 et seq. Even if appellant's pleading be taken as a complaint in compliance with Ark. Stat. Ann. § 29-508, it does not contain allegations which would have justified the setting aside of the decree of June 1, 1977. Appellant actually sought to vary the terms of the original decree upon the basis of false or fraudulent testimony, the truth of which might have been an issue before the court which resulted in the decree. This is not sufficient basis for setting aside the original decree under these statutes. *Makin v. Makin,* 244 Ark. 310, 424 S.W. 2d 875; *Hardin v Hardin,* 237 Ark. 237, 372 S.W. 2d 260; *Pattillo v. Toler,* 210 Ark. 231, 196 S.W. 2d 224; *Hendrickson v. Farmers' Bank & Trust Co.,* 189 Ark. 423, 73 S.W. 2d 725; *Parker v. Sims,* 185 Ark. 1111, 51 S.W. 2d 517.

Nothing that could be considered as a bill of review was filed prior to December 20, 1977. The principal basis of that pleading was the contention that there was a balance of $18,-000 in the corporate bank account and that this was an amount much greater than Pearson had said was present in the account when the case was tried on June 1, 1977. Appellant's petitions, except those relating to the contempt proceedings, are in the nature of a bill of review.

A bill of review is a bill or complaint filed after the lapse of the term seeking to reverse or modify a decree that has been entered.[1] *Smith v. Rucker,* 95 Ark. 517, 129 S.W. 1079, 30 LRA (n.s.) 1030. A bill of review in an equity court in this

---

[1]Under the present statutes, the bill would be one filed more than 90 days after the decree was rendered. Ark. Stat. Ann. § 22-406.3 (Supp. 1977).

state lies only for error apparent on the face of the record or for newly discovered evidence. *Cornish* v. *Keesee*, 21 Ark. 528; *Smith* v. *Rucker*, supra; *Evans* v.*Parrott*, 26 Ark. 600. It does not lie to enlarge or modify a decree rendered by consent. *Cornish* v. *Keesee*, supra. False testimony is not a sufficient basis to justify a bill of review. *Tri-County Hwy. Improvement Dist.* v. *Vincennes Bridge Co.*, 170 Ark. 22, 278 S.W. 627.

As a bill of review, appellant's petition, having been filed more than 90 days after the original decree was entered, and after the time for appeal had expired, could be considered only for newly discovered evidence. *Pyles* v. *Holland*, 187 Ark. 550, 60 S.W. 2d 1029. Such a bill serves the same purpose as a petition for a rehearing in chancery or a motion for new trial at law. *Richardson* v. *Sallee*, 207 Ark. 915, 183 S.W. 2d 508. The granting or refusal of such a bill lies within the sound discretion of the chancellor, and is subject to review on appeal only for abuse of discretion. *Smith* v. *Rucker*, supra; *Richardson* v. *Sallee*, supra. Before a bill for review will lie on the ground of newly discovered evidence, the matter must be such as was not known to the petitioner or could not have been discovered by reasonable diligence, and must be sufficient to change the result of the original trial *Smith* v. *Rucker*, supra; *Richardson* v. *Sallee*, supra; *Dent* v. *Adkisson*, supra; *Tri-County Hwy. Improvement Dist.* v. *Vincennes Bridge Co.*, supra; *Killion* v. *Killion*, 98 Ark. 15, 135 S.W. 452. Before allowing a petition to rehear or a bill of review to be filed, a court ought to be satisfied that the evidence relied on is new and could not, by ordinary diligence, have been discovered prior to the date of the decree complained of. *Stone* v. *Sewer Improvement Dist. No. 1*, 107 Ark. 405, 155 S.W. 99.

The chancellor may have sustained appellee's plea of res judicata. We are not favored with the complete record on which the court's decree of June 1, 1977 was entered. The terms of the agreement between the parties for dissolution of the corporation and division of its assets are not shown except for the statement in the decree that it embodies the agreement. The only specific statements as to division of assets in the original decree relate to physical assets and customer accounts. In any event, appellant has failed to demonstrate error or abuse of discretion in the chancery court's holding on

his post-decretal petition.

The decree is affirmed.

We agree. HARRIS, C.J., GEORGE ROSE SMITH and HICKMAN, JJ.