Dr. Patsy NICHOLS and Mary Alice Bell *v.*
Shirley Bell WRAY

95-1093                                                925 S.W.2d 785

Supreme Court of Arkansas
Opinion delivered July 15, 1996

*Davis & Goldie*, by: *Steven B. Davis*, for appellants.

*James D. Sprott*, for appellee.

DAVID NEWBERN, Justice. The late Eppa Sisco had three daughters, Dr. Patsy Nichols, Mary Alice Bell, and Shirley Bell Wray. Ms. Sisco's will purported to divide her estate equally among the daughters, and there was evidence that she expressed that intention often. After her husband's death, Ms. Sisco altered certificates of deposit by placing Ms. Wray's name on them as joint owner with the right of survivorship. Ms. Bell and Dr. Nichols sought reformation of the certificates or the imposition of a constructive trust for their benefit. The Chancellor did not rule on the reformation request and declined to impose a constructive trust, citing Ark. Code Ann. § 23-32-1005 (Repl. 1994), as interpreted by *Hall* v. *Superior Fed. Bank*, 303 Ark. 125, 794 S.W.2d 611 (1990), which makes the terms of the certificates conclusive on the issue of the intent of the depositor. We are asked to overrule the *Hall* case, and we decline to do so.

The Chancellor did impose a constructive trust for the benefit of Dr. Nichols and Ms. Bell upon one parcel of land Ms. Sisco conveyed to Ms. Wray. That resulted from his finding that it was Ms. Sisco's intention to convey the land to Ms. Wray and thus avoid

losing the property in the event she had to enter a nursing home and not to make a gift of it to Ms. Wray. Ms. Wray cross-appeals that part of the decision, and we affirm on cross-appeal.

In 1979, Ms. Sisco and her husband offered Ms. Wray a one-acre tract of land in exchange for her agreement to take care of them. She agreed, and the land was deeded to her. In 1983, they gave her another tract for the construction of a garage. Neither Dr. Nichols nor Ms. Bell objected to either of these gifts of real estate, and the Chancellor, finding that the transactions were intended as gifts, concluded there were no circumstances warranting the imposition of a constructive trust upon those properties.

In 1985, Mr. Sisco died. Ms. Sisco executed new signature cards on certificates of deposit naming Ms. Wray as Joint Tenant in place of Mr. Sisco. Over Ms. Wray's objection, Dr. Nichols testified that her mother told her Ms. Wray was included on the certificates because a bank employee said a "local person" was needed on the accounts. Both Dr. Nichols and Ms. Bell testified they were aware that Ms. Wray's name was on the accounts, and that they trusted her "judgment" regarding those funds. The Chancellor, as noted above, declined, on the basis of the *Hall* case, to consider any evidence of Ms. Sisco's intent regarding the certificates other than the documents themselves.

The next transaction occurred in January 1991, when Ms. Sisco deeded pasture land to Ms. Wray for the purpose of "squaring up" her property. The land was rented to farmers as pasture, and Ms. Wray collected the rent. The Chancellor did not find evidence sufficient to impose a constructive trust on that property.

The property upon which the Chancellor did impose a constructive trust was the last of the real estate transactions between Ms. Wray and Ms. Sisco in which Ms. Sisco, in 1994, conveyed the property on which her residence was located.

### 1. The CDs

■ The Chancellor's order stated that § 23-32-1005(2)(C) and the *Hall* case precluded him from considering, with respect to the certificates of deposit, the evidence presented by witnesses who testified that Ms. Sisco intended her three daughters to share equally in her estate. His order states:

As regards the joint accounts, there is no evidence of fraud,

undue influence or misrepresentation or any other abuse of the familial trust which existed between the mother and the defendant [Ms. Wray], nor proof of a request from the defendant that the money be given to her. The daughter [Ms. Wray] is a natural object of the deceased's bounty and a person who had, for many years, lived next door and taken care of the deceased's needs to a greater extent than the other children, who lived elsewhere.

The order does not address the request that the certificates of deposit be reformed. The burden of obtaining a ruling upon that requested remedy was upon Ms. Nichols and Ms. Bell. As the Chancellor did not address it, and no objection was made to his failure to address it, we cannot say he erred in not reforming the instruments. *Barnes* v. *Pearson Termite and Pest Control, Inc.*, 266 Ark. 635, 587 S.W.2d 823 (1979).

■ We note in passing that the mistake urged as a basis for reformation was allegedly between the bank and Ms. Sisco as to whether a "local person" had to be named joint tenant. We have not seen a case in which a person who is not a party to a contract has been allowed to obtain reformation of it. It has been held that one who is not a party may not obtain reformation. *Shelter Mut. Ins. Co.* v. *LittleJim*, 927 F.2d 1132 (10th Cir. 1991). *Cf. Hunt* v. *Century Indem. Co.*, 192 A. 799 (R.I. 1937).

Section 23-32-1005(1)(A) addresses instances in which "a deposit has been made or a certificate of deposit purchased in the names of two (2) or more persons and in form to be paid to any of the persons so named, or the survivors of them. It is followed by subsection (2)(A) which states "the account or certificate of deposit ... shall be the property of those persons as joint tenants with right of survivorship," and then subsection (2)(C) which provides, in pertinent part:

(C) The opening of the account or the purchase of the certificate of deposit in this form shall be conclusive evidence in any action or proceeding to which ... the surviving party is a party of the intention of all of the parties to the account or certificate of deposit to vest title to the account or certificate of deposit, and the additions thereto, in such survivor.

■ In the *Hall* case we were confronted with a dispute over

joint accounts held by a decedent and survivor in a bank and in a brokerage firm. There was strong evidence that the survivor's name was on the accounts only to assist the decedent and that she recognized her obligation to hold the proceeds for the beneficiaries named in the decedent's will. After pointing out that "We have not previously addressed the underlying question of whether in the absence of fraud, extrinsic evidence will be allowed to reflect the intent of the parties in establishing joint accounts with right of survivorship," we interpreted the statute as follows:

> We find that the language of Ark. Code Ann. § 23-32-1005(2)(A) and (C) is clear; the opening of the account in the name of two or more persons designated as joint tenants or as joint tenants with right of survivorship "*shall be conclusive evidence in any action* or proceeding to which...the surviving party is a party *of the intention of all of the parties to the account...to vest title to the account...*in such survivor." (Our emphasis.) The first rule to be applied in statutory construction is to give the words in the statute their usual and ordinary meaning. If there is no ambiguity we give a statute effect just as it reads. *Pledger v. Ethyl Corp.,* 299 Ark. 100, 771 S.W.2d 24 (1989).

> The statute declares that the establishment of the account as joint tenants provides conclusive evidence of the intention of all parties. The signature card for the Superior Federal account provided that Dorothy Edwards and Virginia Hall held the account as joint tenants with right of survivorship. Moreover, the signature card suffices to provide written designation to the bank that the account is held in joint tenancy. Therefore, the trial court erred in considering extrinsic evidence as to Dorothy Edwards' intent, and the funds in the account belong to the appellant as surviving joint tenant.

We held the statute did not apply to the account with the brokerage firm because it is not a bank. The evidence of intent was admissible to show it was not the intention of the decedent to make a gift of that account to the survivor, thus we upheld the decision that the survivor was not the owner of the brokerage account.

The Chancellor's decision with respect to the certificates of deposit is completely consistent with our decision in the *Hall*

case. Ms. Nichols and Ms. Bell argue intent is irrelevant to the question whether a constructive trust should be imposed, and that is what we said in *Edwards* v. *Edwards*, 311 Ark. 339, 843 S.W.2d 846 (1992), the implication being that statement is inconsistent with the *Hall* rationale. We note, however, that our opinion in the *Hall* case observed there had been no fraud. We note also that the Chancellor in this case found "no evidence of fraud, undue influence or misrepresentation or any other abuse of the familial trust." In other words, he found no evidence that the intent of Ms. Sisco as "conclusively" determined by the nature of the certificates of deposit was induced by any impropriety on the part of Ms. Wray. Intent may indeed not matter when the issue is whether there has been unjust enrichment and a constructive trust is sought, but if there is no basis for establishment of that restitutionary remedy, other than intent, then the statute controls.

■ We decline to overrule the *Hall* case. Absent a constitutional challenge to the statute, which we have not entertained as yet, we are hardly in a position to change the language of the statute the clear meaning of which we applied in the *Hall* case. As Ms. Wray points out, were it not for the statute, as interpreted, the issue of whether a constructive trust should be imposed would arise almost any time a person decided to make a gift of a bank account to one of several siblings, simply on the basis of an argument that no parent could intend to favor one over another. We have cited the *Hall* decision with approval several times, most notably in *Nall* v. *Duff*, 305 Ark. 5, 805 S.W.2d 63 (1991), and the General Assembly has met twice without taking any action with respect to the statute since our decision in 1990 interpreting it to mean what it says. In these circumstances overruling would not be appropriate.

## 2. *The land*

In her cross-appeal, Ms. Wray argues we should reverse the Chancellor's decision to impose a constructive trust on the last of the four parcels of land that were transferred to her by her mother. The Chancellor imposed the trust because he found clear and convincing evidence that Ms. Sisco's intention in making the transfer was to divest herself of ownership to qualify for public-nursing-home benefits. Ms. Wray contends we should reverse the Chancellor's decision because other evidence indicates that Ms. Sisco's intent was to give her the property outright as recognition for the care she had given over the years. Ms. Wray argues that the pres-

ence of this evidence means that "clear and convincing evidence" to support the imposition of a constructive trust is lacking.

█ To impose a constructive trust, there must be full, clear, and convincing evidence leaving no doubt with respect to the necessary facts, *Tillar v. Henry*, 75 Ark. 446, 88 S.W. 573 (1905), and the burden is especially great when a title to real estate is sought to be overturned by parol evidence. *Nelson v. Wood*, 199 Ark. 1019, 137 S.W.2d 929 (1940). The test on review is not whether the court is convinced that there is clear and convincing evidence to support the chancellor's finding but whether it can say the chancellor's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, and we defer to the superior position of the chancellor to evaluate the evidence. *Brasel v. Brasel*, 313 Ark. 337, 854 S.W.2d 346 (1993); *Wright v. Wright*, 279 Ark. 35, 648 S.W.2d 473 (1983). *See also Davis v. Davis*, 48 Ark. App. 95, 890 S.W.2d 280 (1995). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *RAD-Razorback Ltd. Partnership v. B.G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 462 (1986).

We cannot say that the Chancellor was clearly erroneous in his finding concerning Ms. Sisco's intent in conveying the last parcel of land. While there is testimony that indicates Ms. Sisco stated she was glad for Ms. Wray to have the property because of the care she had received from her over the years, there is ample evidence that she intended her daughters to share equally in her estate, and that her purpose for conveying the last parcel of land was not to make a gift to Ms. Wray but to enable herself to receive nursing home benefits.

Ms. Sisco's will provided her property should go in equal shares to her three daughters. Five disinterested witnesses, including Ms. Sisco's three close friends and her two sisters, testified that Ms. Sisco frequently stated she wanted her children to share equally in her estate and she never stated that she wanted to favor one of her daughters over the others. Mary Alice Bell and Patsy Nichols also testified their mother told them they would share the estate equally with Ms. Wray.

The most compelling evidence of Ms. Sisco's intention for the transfer can be found in Ms. Wray's own testimony, where she

admits, "My mother did not want the State to be able to take her home, should I not be able to take care of her anymore. And so, in case she had to go to a nursing home, she did not want her home to go to the State." Ms. Wray also testified that although the deed was actully executed in April 1994, her mother later "falsified" the document by reexecuting the second page of the deed to show it was signed on April 1, 1991. The deed was filed for record on April 20, 1994. Ms. Wray stated that her mother decided to alter the deed to make it appear to the State that the conveyance had occurred some three years previous to its actual date.

■ In light of the evidence that indictates Ms. Sisco's intention for her daughters to share equally in her property, and Ms. Wray's admission that the last conveyance was intended to protect the property in the event her mother entered a nursing home, we cannot say that we are left with "a definite and firm conviction" that the Chancellor made a mistake by deciding to impose the constructive trust.

Affirmed on appeal; affirmed on cross-appeal.

DUDLEY, J., not participating.