Cite as 2021 Ark. App. 249

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CV-20-378

|  |  |
|---|---|
| BARBARA AUSBROOKS HERRING<br><br>APPELLANT<br><br>V.<br><br>SHANE RAMSEY<br><br>APPELLEE | **Opinion Delivered:** May 19, 2021<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CV-19-201]<br><br>HONORABLE GRISHAM A. PHILLIPS, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

This case involves the imposition of a constructive trust on real property. The parties herein are the record owners as joint tenants with right of survivorship of the property located at 28214 Fairhavens Road, Hensley, Arkansas. Barbara Herring appeals from the circuit court's order finding that her ownership interest is in the nature of a constructive trust and denying her complaint for partition of the property. We affirm the court's order.

Appellee Shane Ramsey and his wife Lisa, Barbara Herring's daughter, purchased the 9.84-acre parcel of land in 2006 and immediately cleared the land and built a shop in which they lived for a period of time. Both Shane and Lisa testified that they paid for this construction without help from Barbara. Barbara purchased the lot adjoining the Ramseys' land in 2007 and built a home on the property. In 2009, Shane and Lisa decided to build a home on their land but were unable to secure financing. The Ramseys both testified that

they never asked Barbara for help but that she volunteered to cosign a note and mortgage in the amount of $162,724. In connection with the closing of the note and mortgage, Lisa and Shane executed a quitclaim deed conveying the property to Shane and Barbara as joint tenants with right of survivorship. Lisa testified that there was never any discussion between them about ownership of the property or about the deed and that she had not seen the document until it was presented to her at the closing. Shane testified that Barbara asked that her name be placed on the deed as an owner of the property. Barbara testified that she cosigned the note but told them "this property isn't going anywhere." In explanation of why the deed conveying the property to Shane and Barbara was executed, Barbara stated: "They needed a place to live. I wanted to invest in the property[,] and I knew—I did it to help them out at the time."

The parties dispute the amount of money Barbara spent on the property. Barbara testified that she gave money to the Ramseys to build the shop, provided money to the builder of the home for an "upgrade," bought a modular building to be used as a school, and spent $7000 at Home Depot for flooring in the home. She also testified that she made numerous house payments for the Ramseys. She said she had no bank records or receipts to reflect these payments explaining, "I love my daughter and I gave her the money." Barbara also said that she enjoyed the use of the land over the years and had stored "tractors and all that" on the property until several years before the hearing when the Ramseys installed a fence between their two lots. She testified that the property went into foreclosure in 2013 after the Ramseys had entered into a contract to sell the property and moved out because

they could not afford it. Barbara refused to sign the contract to sell but did help the Ramseys refinance the property with a lower payment so that they could return.

The Ramseys testified that they made all the mortgage payments on the home, and they provided bank statements back to 2013 to prove these payments. They said that Barbara did not make any of the payments on the note but one year did give them money for a house payment as a combined Christmas and birthday present. Shane testified that he and Lisa paid for the land, the shop, and the barn on the property without any help from Barbara. He also said that Barbara purchased a modular building they used for a school but that he paid to move it to their property. He had to break it down, obtain permits to move it, put it back together once it was on the property, and add a bathroom, electricity, insulation, flooring, and chalkboards. He also admitted that Barbara may have contributed money for some of the flooring in their home. He testified that they attempted to sell the property in 2012 or 2013 because they could not afford it. However, although they accepted an offer and entered into a contract to sell, Barbara would not sign the contract to sell her interest in the property. Shane said they moved out of their home anyway for three or four months, but Barbara wanted them to come back, and so she helped them get the property out of foreclosure and refinanced.

Lisa testified that Shane's parents and Barbara had given them money for groceries and other things when they were struggling financially. She said that Barbara had never mentioned being paid back and had actually torn up a check Lisa had attempted to give her to repay $100 Lisa had borrowed. Barbara had said "this is what parents do" and had thrown the check in the trash.

Although Lisa testified that their relationship with Barbara had always been rocky, she said the permanent estrangement occurred four years earlier when Barbara got married. Lisa said she and Shane had attempted to establish some "boundaries" so that Barbara did not just walk into their home whenever she wanted. Lisa said Barbara began threatening them and said they needed to "get her name off" of the house and "pay her." According to Lisa, Barbara had mentioned various amounts, but the most recent amount was $46,000.

On February 22, 2019, Barbara filed a complaint for partition against Shane, alleging that they were joint tenants of the subject property, that it was not capable of division in kind, and that it should be sold and the proceeds divided and apportioned according to their respective interests. Shane responded and pleaded affirmatively that Barbara's only interest in the property was that of constructive trust. He contended that the court should vest ownership of the property in him in full because the only basis for Barbara's having been placed on the deed was for Shane to obtain financing for construction of his family's home.

After a trial, the circuit court agreed with Shane and found it was clear from the testimony that it was Barbara's intention to help the Ramseys obtain financing. The court found that was her purpose in having her name placed on the deed and that she did not intend to acquire half of the property. The court entered an order on March 3, 2020, finding by clear and convincing evidence that the deed, mortgage, and subsequent refinancing were done by the parties and by Lisa in an effort to allow Shane and Lisa Ramsey to obtain and to keep the residence and property and not truly for the purpose of conveying an ownership interest in the property to Barbara for which she could demand partition. The court found specifically that Barbara's ownership interest was in the nature of a constructive trust.

On appeal, Barbara contends that the court clearly erred in finding the existence of a constructive trust. She contends she made it clear from the outset that she would co-own the property, and she made no agreement to hold the land in trust. She argues that the evidence demonstrated that she made improvements to the property in order to exercise an ownership interest and stopped the sale of the property to maintain that ownership interest. Finally, she argues that there was no testimony that she made a promise or representation that she was holding the land for Shane's benefit. She argues that the imposition of a constructive trust requires evidence of such a promise or evidence that she intentionally led Shane to believe the land would be held for his benefit.

A constructive trust is a remedial rather than a substantive institution. *Brasel v. Brasel*, 313 Ark. 337, 339, 854 S.W.2d 346, 347 (1993). It is an implied trust that arises by operation of law when equity demands. *Higgins v. Higgins*, 2010 Ark. App. 71, at 10, 374 S.W.3d 56, 62. Such trusts are imposed against a person who secures legal title by violating a confidential relationship or fiduciary duty or who intentionally makes a false oral promise to hold legal title for a specific purpose and, after having acquired the title, claims the property for himself. *Higgins*, 2010 Ark. App. 71, at 11, 374 S.W.3d at 62. The basis of a constructive trust is the unjust enrichment that would result if the person having the property were permitted to retain it. *Id.*

To impose a constructive trust, there must be full, clear, and convincing evidence leaving no doubt with respect to the necessary facts; the burden is especially great when a title to real estate is sought to be overturned by parol evidence. *Nichols v. Wray*, 325 Ark. 326, 333, 925 S.W.2d 785, 789 (1996). The test on review is not whether we are convinced

5

that there is clear and convincing evidence to support the circuit court's findings but whether we can say that its findings are clearly erroneous. *Higgins v. Higgins*, 2010 Ark. App. 71, at 11, 374 S.W.3d 56, 62. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake was made. *Id.* Disputed facts and determinations of credibility are within the province of the fact-finder. *Id.*

An implied trust is an equitable remedy designed to disregard the legal title. *McNeil v. Robbins*, 2014 Ark. App. 222. Imposition of a constructive trust does not depend exclusively on the misconduct or misrepresentation on the part of a party against whom a constructive trust operates. *Betts v. Betts*, 326 Ark. 544, 932 S.W.2d 336 (1996). While a confidential relationship does not in itself give rise to a constructive trust, an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against the other suffices generally to ground equitable relief in the form of the declaration and enforcement of a constructive trust. *Hall v. Superior Fed. Bank*, 303 Ark. 125, 134, 794 S.W.2d 611, 615–16 (1990) (citing 76 Am. Jur. 2d *Trusts* § 228 (1975)). The basis of the constructive trust is the unjust enrichment that would result if the person having the property were permitted to retain it. *Betts*, 326 Ark. at 547, 932 S.W.2d at 337–38 (quoting *Edwards v. Edwards*, 311 Ark. 339, 343, 843 S.W.2d 846, 848 (1992)).

Both parties and Lisa testified. Lisa and Shane testified that they purchased the property three years before deciding to build a house for which they needed to borrow money. They both testified that Barbara volunteered to cosign a note because they were unable to secure the financing. Although the parties disputed exactly how much money

6

Barbara had given Shane and Lisa in the past, the Ramseys testified that the money was received as gifts from Lisa's mother. They testified that they made all the note payments. Barbara provided no evidence to support her testimony that she had made numerous note payments. Barbara testified that the deed giving her an interest in the property was executed because Lisa and Shane "needed a place to live. I wanted to invest in the property[,] and I knew—I did it to help them out at the time."

In sum, there was conflicting evidence. The circuit judge saw and heard the witnesses. He saw how they responded to both direct and cross-examination and was in the superior position to evaluate their credibility. The court found that the deed was executed to allow the Ramseys to build a home for which they could not independently obtain financing and not for the purpose of conveying an ownership interest in the property to Barbara for which she could demand partition. We cannot say that we are left with a definite and firm conviction that a mistake has been made. Accordingly, we affirm.

Affirmed.

BARRETT and WHITEAKER, JJ., agree.

*Jensen, Young & Houston, PLLC*, by: *Terence C. Jensen*, for appellant.

*Baxter Law Firm, PLLC*, by: *James R. Baxter*, for appellee.